## WILLIAM MURTAUGH, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Action by an employee against his master for failing to furnish reasonably safe and suitable machinery — admissibility of evidence to show its defective condition — when opinions. of witnesses are admissible — when a verdict will not be set aside as excessive — the master is not liable unless the accident would not have occurred but for his negligence.*

In an action, brought to recover damages for personal injuries sustained by the plaintiff while in the employment of the defendant as a servant in and about its railroad shops at Frankfort, it appeared that the plaintiff was employed to run an emery wheel driven by steam, which was used by the defendant in its business in the said shops; that, on April 10, 1886, while the plaintiff was running the said wheel, as such employee, the wheel, by reason of unsafeness, defectiveness and insecurity of the machinery, and parts connected therewith, exploded, thereby tearing, lacerating and permanently injuring the plaintiff's left hand, wrist and arm.

The wheel, which was two feet in diameter and six inches thick across the edge, was made of six layers of pine boards one inch thick; each layer consisted of six segments or sections so cut that the grain and the joints between the segments in each layer ran from the circumference to the center of the wheel at all points. The joints between the segments were lapped a little, but no bond or tie was in the wheel, nor were the grains crossed at any point. The wheel was geared to run, and did run, with a speed of 1,300 revolutions a minute, and was built under the authority and supervision of the superintendent of the defendant at the request of the foreman of machinery and by the foreman of the carpenters.

While the plaintiff was running the wheel, polishing a piece of iron, he reached up to stop the wheel by shifting the belt, as it was arranged to be used, when the wheel exploded and flew into a number of pieces, splitting along the grain and the joints between the segments running from the circumference to the center.

*Held*, that, upon the evidence before the jury, it was a question of fact whether the wheel was properly constructed or not; that, as the defective construction of the wheel was not apparent or visible, or known to the plaintiff, he was not chargeable with notice of its internal structure or condition, or that it was improperly built and not in accordance with the most improved plan for the construction of such wheels.

There was some evidence tending to show that the wheel was untrue or unbalanced in its operation, and that the plaintiff discovered the same and that he called the attention of his superiors to it, received directions and instructions from them in respect to remedying the same, and that some efforts were made to remedy the untrueness, which did not prove wholly successful.

*Held*, as the jury must be assumed to have found that the plaintiff did not cause the wheel to be untrue or contribute to its unbalanced condition, or know of the defect in the construction of the wheel, that he did not assume the risks and perils to which he was subjected by reason of the defective condition of the wheel.

*De Forest* v. *Jewett* (88 N. Y., 269) distinguished.

That there was no force in an exception taken to a ruling of the court that a witness, who had used emery wheels in different factories for seven years, "had been presumptively qualified to speak in respect to the construction of the emery wheel in question."

That it was not error to exclude a question put to a witness as to whether he would consent to run a wheel out of balance a thousand revolutions a minute or not.

That the question put to a witness as to what he would say as to the prudence and care of the operator of a wheel, polishing a bar three and one-half feet long and three inches in width, weighing forty pounds, taking one hand off the bar and leaving the bar on the wheel, controlled with only one hand, was properly excluded, as the question whether the act referred to was a prudent or careful one was a question of fact for the jury to determine after a careful detailed statement of all the facts relating thereto.

It appeared that the plaintiff, a married man with one child, was receiving, at the time of the accident, one dollar and a-half per day; that he lost three fingers, and that his hand did not get well until some eight months thereafter; and that it became necessary for the doctor to probe it and take out the bone, and that some of the bone came out at the wrist; and that the left wrist continued to be stiff ; and that the plaintiff suffered a great deal of pain directly after the accident; that he was nervous, excitable and somewhat delirious. The injured arm and wrist were exhibited to the jury.

*Held*, that a verdict of $6,000 would not be set aside as excessive.

The judge charged the jury "that if the accident was the joint result of the internal construction (of the wheel), and of its being out of true, the joint result of these two causes, then the fact that the company might not or would not be responsible for it, because of its being out of true, would not relieve the company from the liability with reference to the other; that is to say, if a result happens jointly from two causes, and the defendant is chargeable with one of those causes, then so far as that point would be concerned, so far the defendant would be liable unless the plaintiff himself was chargeable with the other cause."

*Held*, that an exception to the charge was well taken; that by this charge the judge failed to instruct the jury that the defendant would not be liable for the negligence, in what he termed the internal construction of the wheel, unless the accident would not have occurred but for such negligence; and the effect of the charge was to lead the jury to understand that if the defendant was negligent in constructing the wheel, it was liable, although the accident might have occurred by reason of its being out of true and independent of such negligent construction.

APPEAL from a judgment, entered upon a verdict for $6,000, rendered at the Herkimer Circuit, and also from an order denying a motion, made upon the minutes of the justice before whom the action was tried, for a new trial.

The plaintiff in his complaint alleges that the defendant was operating the West Shore Railroad Company, as lessee, and maintaining machine and repair shops, and other appurtenances thereto belonging, at the village of Frankfort, April, 1886; and that he was in the employment of the defendant as a servant in and about its shops at Frankfort, and was employed to run an emery wheel driven by steam, and used by the defendant in its business in said repair shop at Frankfort; and that it was the duty of the defendant to provide a " good, safe and secure emery wheel, with good, safe and secure machinery and apparatus with which to operate and run the said wheel."

It also avers that the defendant, not regarding its duty in that behalf, carelessly, negligently and unskillfully " put the plaintiff to run an unsafe, defective and insecure emery wheel of which it had notice, and that the defendant provided insecure apparatus for running said emery wheel, of which the defendant also had notice." That on the 10th day of April, 1886, " while plaintiff was, as such employee, running the same in the capacity aforesaid for the defendant, the said emery wheel, by reason of unsafeness, defectiveness and insecurity of the machinery and apparatus connected therewith, exploded, thereby tearing and lacerating, and permanently injuring plaintiff's left hand, wrist and arm, in that it tore off the three first fingers of the said hand, carrying away the three first bones of the hand known as the metacarpal bones, and two of the carpal bones of the wrist, and injured and tore away other parts of the plaintiff's said left hand wrist and arm."

When the accident occurred, Peter Garrison was the general superintendent of the shop, and E. L. Bergeman was foreman of the machine department, and Leander McKee was foreman of the carpenter department. The emery wheel was located in the shop near the engine for the purpose of polishing pieces of metal. The wheel in question was made of pine wood, two feet in diameter, and six inches thick across the edge. It was made in segments or sections, so cut that the grain and the joints between the segments in each layer ran from the circumference to the center of the wheel at all

points. The boards were an inch thick. There were six layers and in each layer six segments, making six joints in each layer. The joints between the segments were lapped a little, but no bond or tie was in the wheel, nor were the grains crossed at any point. An aperture was made through the center of the wheel by which it was slipped on to a shaft, and a washer was put on the outside with a nut to hold the wheel on the shaft. The washer extended about one-half inch from the shaft out on the sides of the wheel. There was no other plate or disc on the wheel, nor collar or other protection was inserted in the center of the wheel. The evidence tended to show that the lumber with which the wheel was built was not thoroughly seasoned. The wheel was geared to run, and did run, with a speed of 1,300 revolutions a minute. It was built under the authority and supervision of Garrison, the superintendent, at the request of the foreman of machinery Bergeman, and by McKee, the foreman of carpenters. Garrison saw the wheel while it was being constructed and after it was set up. The plaintiff was directed to run the wheel, and after a while it appeared that the wheel did not run true, that one side was higher than the other, and the plaintiff applied to Bergeman about it, who told the plaintiff to get some tin and put it in. Again it run untrue, and the plaintiff went to Bergeman about it again, who told him to get Herrick, a workman there, to fix it, which the plaintiff did. The plaintiff spoke to Bergeman about its running out of true, and he attributed the trouble to the plaintiff. Bergeman fixed the wheel a little by driving one side down with a hammer. While the plaintiff was running the wheel, polishing a piece of iron, he reached up to stop the wheel by shifting the belt, as it was arranged to be used, when the wheel exploded and flew into a number of pieces. Plaintiff received his injuries to the left hand and arm. The wheel, when it burst, split along the grain and the joints between the segments running from the circumference to the center. The broken pieces of wheel were exhibited to the jury, and there was evidence given tending to show that the wheel was improperly constructed, and was defective and insecure for the purpose for which it was designed.

*Ashbel Green,* for the appellant.

*E. La Grange Smith* and *A. M. Mills,* for the respondent.

HARDIN, P. J.:

Upon the evidence before the jury, it was a question of fact whether the wheel was properly constructed or not. Whether the defendant had discharged its duty, which required of it "to furnish reasonably safe and suitable appliances, such as a prudent man would furnish if his own life were exposed to the danger that would result from unsuitable or defective appliances." (*Burke* v. *Witherbee*, 98 N. Y., 565.)

We must assume, therefore, that the jury have found the defendant was guilty of negligence in providing for the use of the plaintiff an unsafe, defective and insecure emery wheel. The defective construction of the emery wheel was not apparent or visible, or known to the plaintiff; he, therefore was not chargeable with notice of its internal structure or condition, and that it was improperly built and not in accordance with the most approved plans for construction of such wheels. There was some evidence tending to show that the wheel was untrue or unbalanced in its operation, and that the plaintiff discovered the same and called the attention of his superiors to it, received directions and instructions from them in respect to remedying the same, and some efforts were made to remedy the untrueness, which did not prove wholly successful. Because the plaintiff continued to use the emery wheel after he had discovered that it was untrue and unbalanced, the learned counsel for the defendant insists that there can be no recovery in this action.

The learned trial judge stated to the jury that the plaintiff must make out to their satisfaction, viz.: "That he has been injured by reason of some negligence on the part of the defendant, and that no negligence on his part contributed to the result. If both of these are found by you to your satisfaction in this case, then you will come to the question of damages; if both are not found, then the defendant is entitled to your verdict." Later on, in dealing with certain requests that were made to him, the learned judge observed, viz.: "I suppose we understand that my view which I presented to the jury is that it is not a bar to this action (to wit, that the wheel was out of true), but is a matter to be by them considered in determining whether or not there was contributory negligence on the part of the plaintiff."

It must be assumed that the jury have found that the plaintiff

did not cause the wheel to be untrue, or contribute to its unbalanced condition. It must also be assumed that he did not know of the defect in the construction of the wheel, therefore he did not assume the risks and perils to which he was subjected by reason of the defective condition of the wheel. (*Gibson* v. *Erie Railway Co.*, 63 N. Y., 449; *Evans* v. *L. S. & M. S. R. Co.*, 12 Hun 291.) This case is, therefore, unlike *DeForest* v. *Jewett*. It more nearly resembles *Plank* v. *New York Central and Hudson River Railroad Company* (60 N. Y., 607). In the latter case there was no evidence that the deceased " had actual, present knowledge of the existence of the ditch " which caused the injuries. (See opinion of TRACY, J., in *De Forest* v. *Jewett*, 88 N. Y., 269.) If the plaintiff had known of the defective condition of the wheel and continued in its use, a different question would have arisen from the one now presented.

We think there is no force in the exception taken to the ruling of the court, " that the witness had been shown presumptively qualified to speak in respect to the construction of the emery wheel in question." The witness had used them in different factories for seven years. Nor in a similar ruling in respect to the competency of the witness Baker. The witness had stated that he had been for a number of years engaged in the polishing department of Ilion, and that he had wheels there that he had used for twenty years; that he had had charge of the shop and men and the machinery in it, and that he had polishing wheels built, and built them himself. The witness added, viz. : " The very fact of the grain running to the center, alone, is enough, that makes it no better than cutting off the ends of a log and making a wheel out of that." The ruling at folio 174 was not erroneous; the abstract question put to the witness as to whether he would *consent* to run a wheel out of balance a thousand revolutions a minute or not, was properly excluded.

The question put to the witness as to what ne would " say as to the prudence and care of the operator of a wheel, polishing a bar three and one-half feet long and three inches in width, weighing forty pounds, taking one hand off the bar and leaving it on the wheel, controlled with only one hand " was excluded, and we think properly. Whether the act embraced in the question was a prudent or careful one was a question of fact for the jury to determ-

ine after a carefully detailed statement of all the facts relating thereto. The question proposed to substitute the opinion of the witness on the question of "prudence and care." We think it was not error to exercise the discretion in cross-examination, in respect to whether the witness made some other wheel on some other occasion to do small jobs on. It did not relate to the issue involved here.

It is insisted that the damages awarded by the jury are excessive. It appears in the evidence that Dr. Lehr and Skiff treated the plaintiff; that he lost three fingers, and that his hand did not get well until some eight months thereafter; and that it became necessary for Dr. Hosford to probe it and take out the bone; and that some of the bone came out from the wrist, and that the left wrist is stiff now. It also appeared that the plaintiff was receiving one dollar and fifty cents a day at that time; that he was a married man with one child. It appeared that the plaintiff suffered a great deal of pain directly after the accident, and that he was nervous, excitable and sometimes delirious. The injured arm and wrist were exhibited to the jury. In such cases "the bodily pain and suffering is part and parcel of the actual injury, for which the injured party is as much entitled to compensation in damages as for loss of time or the outlay of money." (*Morse* v. *Auburn and Syracuse R. R. Co.*, 10 Barb., 621.)

In *Caldwell* v. *Murphy* (1 Duer, 233), it was held that "in an action for an injury to the person, the circumstances, condition in life and pursuits of the plaintiff may properly be given in evidence, in order to enable the jury to determine the extent of his actual damages (and also held that), an inquiry made into the probable consequences of the injury, as transitory or permanent, is eminently proper." (S. C., affirmed 11 N. Y., 416.) In *Curtis* v. *Rochester and Syracuse Railway Company* (18 N. Y., 534), it was held, viz. : That "damages recoverable for bodily pain and suffering, by a person injured by the negligence of another, are not limited to that incurred before the trial, but extend to such future suffering as the evidence renders it reasonably certain must necessarily result from the injury." We see no occasion to declare that the jury was moved by passion, prejudice or corruption in determining the amount of the verdict upon the evidence and exhibits before them. Whether the plaintiff was guilty of contributory negligence on the occasion that he

received the injuries or not was a proper question for the jury under the instructions delivered to them by the learned trial judge.

But a more serious question arises from the following portion of the judge's charge : " That if the accident was the joint result of the internal construction and of its being out of true, the joint result of those two causes, then the fact that the company might not or would not be responsible for it because of its being out of true would not relieve the company from the liability with reference to the other. That is to say, if a result happens jointly from two causes, and the defendant is chargeable with one of those causes, then, so far as that point would be concerned, so far the defendant would be liable, unless the plaintiff himself was chargeable with the other cause. If a result is produced by the joint negligence of the defendant and a third party outside of a case, then that, under the law, is deemed negligence on the part of the defendant, he being then, in such case, one of the joint actors. Then if the plaintiff is not negligent, so far the cause of action will be maintained ; so that in this case, if this result, this bursting of the wheel, was produced solely by the internal construction of the wheel, then you have a right to say, if the wheel was not properly built, that the defendant was negligent ; so you would have a right to say that the defendant was negligent provided it was the joint result of the internal construction and of its being out of true, provided, however, that the plaintiff himself was not responsible for its being out of true ; so that if, under either of those views, you come to the conclusion that this defendant was negligent, then you will come to the other proposition, and the real basis of this action, as to whether or not the plaintiff himself was careless, whether he by any fault of his own contributed to the result."

By this charge the learned judge failed to instruct the jury that the defendant would not be liable for the negligence, in what he termed the internal construction of the wheel, unless the accident would not have occurred but for such negligence. The effect of the charge was to lead the jury to understand that if the defendant was negligent in constructing the wheel it was liable, although the accident might have occurred by reason of its being out of true and independent of such negligent construction. The vice of this charge rests in the fact that the jury were instructed that the defend-

ant was liable to the plaintiff for an act of negligence, which, concurring with another act, for which it was not liable, produced the plaintiff's injury, although the accident might have occurred without the negligence for which defendant was liable.    In the case of *Ring* v. *City of Cohoes* (77 N. Y., 83, 89, 90) it was held, where, without any fault on the part of the driver, his horse became frightened and unmanageable and ran away, and this, with a culpable defect in the highway, produced the injury, the municipality is liable, provided the injury would not have been sustained but for such defect.    In delivering the opinion of the court in that case, EARL, J., says: "When several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have happened, it may be attributed to all or any of the causes, but it cannot be attributed to a cause unless without its operation the accident would not have happened."    The same doctrine was reasserted in *Ehrgott* v. *Mayor, etc., of the City of New York* (96 N. Y., 283).

In *Cone* v. *Delaware, Lackawanna and Western Railway Company* (81 N. Y., 206) it was held, that where a master furnished defective machinery for use in the prosecution of his business, he is not excused by the negligence of a servant in using the machinery, from liability to a co-servant for an injury which would not have happened had the machinery been suitable for the use to which it was applied.    In *Searles* v. *Manhattan Railway Company* (101 N. Y., 661) the court says: Where the fact is that the damages claimed in an action were occasioned by two causes, for one of which the defendant is responsible, and for the other of which he is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause.    In *Taylor* v. *City of Yonkers* (105 N. Y., 203) the doctrine of the foregoing cases was again held and the foregoing principles again stated.

We are of the opinion that the defendant's exception to this portion of the charge was well taken, and that for this error the judgment and order must be reversed and a new trial granted.

FOLLETT and MARTIN, JJ., concurred.

Judgment and order reversed on the exceptions and a new trial ordered, costs to abide the event.