[No. 600.   Decided February 14, 1893.]

MILTON L. BAER, *Appellant*, v. MELODY CHOIR, *Respondent*.

TAX DEED — VOID ASSESSMENT — ACTION TO RECOVER LAND — STATUTE OF LIMITATIONS.

Under the revenue law of 1871, the assessment of unoccupied land to one not its owner was unauthorized and void, and the presumption raised by a tax deed, that an assessment to a certain person had been properly made, is rebutted by evidence showing ownership in another.

The statute of limitations ( Code 1881, ch. 2 ) is not controlled or affected by §§ 1294, 1683, Code of 1881, providing that "when a limitation or period of time prescribed in any existing statute for acquiring a right or barring a remedy has begun to run before this code takes effect, and the same or any limitation is prescribed in this code, the time which has already run shall be deemed to be part of the time prescribed as such limitation by this Code," as such sections were parts of laws on special subjects enacted in 1881, and were not embraced in the civil practice act of that year.

Adverse possession of real property from August, 1878, to April, 1890, will not bar an action quieting title thereto either under the law of 1862–3, imposing a twenty-year limitation on such an action, or under the law of 1881, which reduces the time of commencing such actions from twenty to ten years.

The entire revenue act of 1869 was repealed by the revenue act of 1871, although portions thereof may not have been in conflict with anything contained in the later law; consequently the three-year limitation upon the right to institute suits for the recovery of lands sold for taxes, which was contained in said act of 1869, had no application to tax sales under the revenue law of 1871.

*Appeal from Superior Court, King County.*

*Beriah Brown, jr., Junius Rochester,* and *Milton L. Baer,* for appellant.

*Hughes, Hastings & Stedman,* and *Fred. H. Peterson,* for respondent.

The opinion of the court was delivered by

STILES, J.—This was an equitable action brought by the appellant, who was in possession of the land which was the subject of the controversy, to quiet his title against two tax deeds and a quitclaim deed. The disposition of the tax deed from the city of Seattle and the quitclaim deed seems to be left to be controlled by the disposition of the case made upon the tax deed executed by the sheriff of King county to the respondent, August 27, 1878. The appellant deraigned complete title from the United States to himself through sundry mesne conveyances, the deed to him having been executed February 7, 1889, at which time he went into possession of the lots in question, viz., lots 7, 8 and 9, block 22, Edes & Knight's addition to the city of Seattle. The chain of title showed that one Elizabeth B. Bonnell took title to the land by a deed October 8, 1870, and the conveyance from her was executed January 29, 1889. Respondent produced a tax deed from the treasurer of King county, dated August 27, 1878, purporting to convey the lands in dispute and other lands, for taxes unpaid thereon for the year 1875, assessed for that year to one N. B. Knight. This deed was recorded in the office of the auditor of King county on the 30th day of April, 1879. Under objection this deed was admitted in evidence, but appellant maintains that it was a void deed under the evidence in the case.

The first proposition to sustain this contention is, that the property was not assessed to the owner thereof, Eliza-

beth B. Bonnell, or to an unknown owner.    The act of 1871 (Laws 1871, p. 36), contains the following provisions in regard to the assessment of property for taxation:

"SEC. 6. All lands shall be assessed in the county in which the same shall lie, and every person shall be assessed in the county where he resides, when the assessment is made for all real and personal property then owned by him within such county; but land owned by one person and occupied by another may be assessed in the name of the owner or occupant; and unoccupied land, if the owner is unknown, may be assessed as such without inserting the name of any owner."

"SEC. 22. Unoccupied lands liable to taxation, when the name of the owner is unknown, shall be described and the value thereof set down in the assessment roll, in a part thereof separate from the other assessments, in the same manner that lands of residents are required to be described, and the value thereof designated."

Sec. 23 contains the form of an assessment roll for real property, and § 17 prescribes that the assessor shall set down in the roll, in separate columns, according to the best information he can obtain —*First*, The names of all the taxable persons in his county; *second*, a description of each tract or parcel of land to be taxed, etc., corresponding with the form of the roll given in § 23.   Sec. 33 was as follows:

"The sheriff shall proceed to call once on each person named in the transcript, if he can be found in the county, and collect the taxes charged as provided in this act, and if not then paid or the person be not found, shall levy the same on the goods and chattels and other personal property of such person, and give six days' notice of the time and place of sale and the property to be sold, by posting up advertisements in four public places in the county, and sell the same at public auction, and if such property shall sell for more than the taxes, cost and damages, the surplus shall be paid to the owner thereof," etc.

After thus calling upon each person named in the tran-

script, the sheriff was required to make his return to the auditor, showing a list of taxes remaining unpaid; and thereupon the auditor was required to make up lists of lands, city and town lots, returned as delinquent, with the amount of taxes due thereon, and deliver one list to the sheriff, who was authorized to proceed and sell the property described in the list. Sec. 43 provided for the correction of the name of any person taxed, if any error therein were discovered, and the person be taxable. Sec. 38 declared that the certificate of purchase should be held to convey all right, title and interest of *the person in whose name* such land or town lots should have been taxed; and § 43 also provided a most liberal means for the taxation of any land found to have been omitted.

From these provisions we think it is clear that it was the intention of the law of 1871 that somewhat unusual care should be taken in the matter of assessing real estate to the owners thereof. In this instance the property taxed was unoccupied land, and it was made the duty of the assessor, if the owner of such land was unknown, to assess the property as unoccupied land, owner unknown. As has been seen, Elizabeth B. Bonnell had been the owner of this property since 1870, and it is made reasonably certain by the evidence that she was not a resident of King county or of the Territory of Washington. Were there nothing in this case but the recital of the deed that the property had been assessed to Knight as owner, the presumption of the regularity of all former proceedings would carry the presumption that the assessment to him had been properly made by the officer. But the record shows that, although Knight had been the owner, he had conveyed by a recorded deed in 1870; that for the years 1873 and 1874, at least, the lots had been assessed to Mrs. Bonnell, and that Mrs. Bonnell did not convey until 1889; and this showing was sufficient to rebut the presumption which the deed raised.

Respondent maintains that the act of the assessor in inserting the name of Knight was a mere irregularity, and cites in support of his position, *Cooper v. Jackson*, 71 Ind. 244; *Stilz v. Indianapolis*, 81 Ind. 582; *Peckham v. Millikan*, 99 Ind. 352; *Corning Town Company v. Davis*, 44 Iowa, 631; but a reference to the statute under which the Indiana cases were cited shows that they were all based upon a provision that an error in the name of the party to whom property was assessed should not constitute anything more than an irregularity. It does not appear from those cases whether or not there were provisions in the revenue law of Indiana looking toward the collection of taxes out of the personal property of the individuals against whom the tax was assessed, and making a demand a condition precedent to the right to sell real estate; but it is the more likely that no such provision existed, as it is not a usual provision in tax laws. In the Iowa case, land was assessed to an unknown owner when the fact was the owner resided in the county, and the records disclosed his name, and the court merely presumed that the assessor did his duty in endeavoring to ascertain the name of the owner, and that the name was in fact unknown to him. The better rule upon this subject is laid down in *Whitney v. Thomas*, 23 N. Y. 281. The statute there construed is the same as our act of 1871 in substance, and it was held that such an assessment was unauthorized and void. A recent case upon the same subject is *Murtaugh v. New York Central, etc., R. R. Co.*, 3 N. Y. Supp. 483, where the same result was reached. [ Citation corrected in opinion on re-hearing.]

The assessment being void as against the true owner, it is conceded by respondent that there was no sale, and that the deed was void also. For the reason that there was no sale, it is also conceded that the special three-year limitation, found in § 2939 of the Code of 1881, has no application. But it is maintained that although the deed was

void it afforded color of title under which, by virtue of the circumstances of this case, respondent is entitled to be protected in asserting title by adverse possession maintained · for more than ten years.    It is not necessary to pass upon the facts claimed to constitute adverse possession.    Respondent received his certificate of sale about July, 1876, and immediately went upon the lands certified to have been sold, and assumed to be the owner of them, and continued ·to exercise acts of ownership and dominion over them until 1888.    In 1889 appellant entered peaceably and has been in undisturbed possession ever since.

The statute of 1871 did not in terms give a purchaser at a tax sale any right of possession of lands sold, before the issuance of the deed, and such a possession would not be ''under color of title;'' but if the continuance of a possession initiated in that way could be the adverse possession contemplated by the law on that subject, then there was more than ten years of such possession from the date of the deed to the commencement of this action; for the constructive possession, claimed to have existed for all of the time but very short periods, was as fully continued after the respondent left the state in 1888 as before.

This deed was taken in 1878, when the statute of limitations allowed twenty years for the commencement of actions for the recovery of real property (Laws 1862–3, p. 86); and this continued to be the law until 1881, under the revisions of 1869, 1873 and 1877.    There never had been, however, any limitation upon the time for commencing actions to remove a cloud from a title by one in possession; although in a case like this, where an adverse possession has been maintained for the full term of the statute under the instrument alleged to constitute the cloud, it is a defense to the action.    But § 26 of the Code of 1881 reduced the time from twenty to ten years, and the only remaining point in controversy is whether or not the new

limitation had the effect to complete respondent's adverse possession August 27, 1888, instead of ten years later, as would have been the case under the old law. This action was commenced April 25, 1890, too late by eight months, according to respondent's contention, but in abundance of time according to the other side. There are two sections (1294 and 1683) in the Code of 1881 which respondent urges should be taken as governing this matter, and they are in the following terms:

"When a limitation or period of time prescribed in any existing statute for acquiring a right or barring a remedy has begun to run before *this code* takes effect, and the same or any limitation is prescribed in *this code*, the time which has already run shall be deemed to be part of the time prescribed as such limitation by *this code*."

It has, perhaps, been a misfortune to the people of the territory and state that the acts of the legislature of 1881 have not, for the most important part, been printed except in the volume known as the code of that year, and this is an evidence of it; for the civil practice act passed December 1, 1881, which ends with § 763, did not contain either of the sections above mentioned. Section 1294 was contained in an act entitled "An act relative to crimes and punishments and proceedings in criminal cases," passed November 16, 1881; and § 1683 was contained in an act entitled "An act defining the jurisdiction and practice in probate courts of Washington Territory," passed November 4, 1881 (Abbott's Real Property Statutes, No. 339, n.). Both acts were approved December 1, 1881, and went into effect immediately; and wherever in the code the words "this code" are found, the acts read "this act" only. In the face of these facts it cannot be held that the sections quoted had, or were intended to have, effect outside of the domain of the laws of which they were parts; and the con-

clusion is imperative that the general statute of limitations found in chapter 2 of .the Code of 1881 is not controlled or affected by them.

The supreme court of the United States, in *Sohn v. Waterson*, 17 Wall. 596, a case where it was unfettered by any state statute or judicial construction, preferred to hold that a new statute of limitations took effect upon preëxisting rights of action, and limited them, but that in every such case the full time allowed by the new statute should be available to the complainant; and it has consistently adhered to that view.    Some of the state courts have taken different views, with the confusing effects pointed out by the federal supreme court.    In view·of the policy of quieting titles, as shown forth in the shortening of the time for bringing these real property actions, we should follow *Sohn v. Waterson*, and hold that in this. case the respondent's title would have become perfect (the facts of possession being assumed to be sufficient) December 1, 1891, unless the next consideration to be mentioned should have some effect.

It is suggested that § 760 of the Code of 1881, reading "No action or proceedings commenced before this code takes effect, *and no right accrued,* is affected by its provisions," continued the twenty-year statute in full force as to all such rights of action then existing; but inasmuch as it is not necessary that we decide the latter point, we prefer to leave it open until a case is presented in which it shall be the governing test.

We hold, therefore, that the appellant was entitled to have his title quieted as prayed for; and the decree is set aside and the cause remanded to the superior court for that purpose.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.

### ON RE-HEARING.

The opinion on the re-hearing was delivered March 16, 1894, by

STILES, J. — Deeming that there was, perhaps, some conflict between the decision in this case and that of *Ward v. Huggins, ante,* p. 617, we granted re-hearings in both cases, and both are now ready for final disposition.    We adhere to the decision made in this case at the former hearing; but there are matters raised in the later briefs which require notice.

1. We were in error when we stated in the former decision that the record showed that the lots had been assessed to Mrs. Bonnell for the years 1873–4, and that she did not convey until 1889.    All that appeared from the record was, that the lots were conveyed to her in 1870, and that she conveyed to the appellant's grantor in 1889. The legal presumption is (and it is so conceded to be by counsel), that she did not convey to any other person in the interim; therefore she did not convey to Knight, and therefore he was not the person to whom the property was assessable in 1875.    On the other hand two presumptions are claimed for the position that Knight was the owner: (1) That an officer has performed his duty in accordance with law; (2) the presumption declared by the statute to the effect that the deed should be presumptive evidence of the regularity of all former proceedings.

But in tax proceedings the presumption in favor of official acts did not prevail; for before the statute the holder of a tax deed was bound to prove the regularity of every essential step to sustain his title.    As to the statutory presumption, it is clear that it was enacted merely for the purpose of changing the burden of proof.    Before it the purchaser must prove a perfect compliance with the tax laws; but under it the owner must show a substantial defect in the proceedings before he would be entitled to have

the deed set aside.    Having shown facts which raised the legal presumption that Mrs. Bonnell was the owner from 1870 to 1889, we think the presumption of the statute was neutralized, and the burden of showing that Knight was in fact the owner rested upon the respondent.    And this ought to be the law of the case, for if we suppose Mrs. Bonnell not to be alive at the time of the trial, it would, in all probability, be impossible to prove that she did not convey to Knight, or to some one who conveyed to him, between 1870 and 1875; but, on the other hand, if she did convey, a resort to the records of the county would almost certainly disclose the fact and settle the matter beyond controversy.

2.  Counsel claim to have been misunderstood as to their concession on the subject of the three-year statute.    The former opinion said:

"The assessment being void as against the true owner, it is conceded by respondent that there was no sale, and that the deed was void also.    For the reason that there was no sale, it is conceded that the special three-year limitation found in § 2939 of the Code of 1881 has no application."

The language of the brief was:

"It is also to be observed that our statute applies the limitation only to cases where the land has been 'sold for taxes.'    If there has, in fact, been no legal assessment or levy, there can, in law, be no tax.    So, likewise, if there has been no sale, the statute has no application."

Having held the assessment to be absolutely void, we take it that there was no assessment, no tax and no sale, although there may have been an abortive attempt to accomplish each of these.    What has just been said, however, must be taken to apply only to the particular revenue act of 1871.    In this connection it is called to our attention that one of the cases cited in support of the proposition that the assessment was void was *Murtaugh v. Railroad*

*Co.*, 3 N. Y. Supp. 483. The proper citation was *Zink v. McManus, Id.* 487.

Concerning the merits of the question as to the three-year statute of 1881, in *Ward v. Huggins, supra,* we have held that it had no application to tax deeds issued in pursuance of sales made under prior revenue laws. It is maintained, however, that as the same provision occurred in the revenue law of 1869 (Laws, p. 176), and as the repealing clause of the act of 1871 only covered all acts and parts of acts in conflict with the new act, the limitation section remained the law of the territory, because it did not conflict with anything contained in the new law. Each of these acts was entitled "An act to provide for the assessing and collecting county and territorial revenue;" each covered the same subject matter; and it was evidently the legislative intention that the entire act of 1869, as a revenue measure, should cease to have any existence. If all the points of difference in an old revenue law which were not clearly in conflict with the new act should be construed to remain in force, the problems of taxation would be multiplied beyond human understanding. To have to understand and obey one law at a time is as much as the average citizen is equal to.

3. Chapter 22, Acts of 1887–8, p. 43, is invoked. If the tax deed in question was void, and if the act mentioned was intended to apply retrospectively so as to affect such cases as this, then the act is open to the objection that the effect of it would be to take property without any process of law; and therefore it must be obnoxious to both the federal and the state constitutions.

Ordered as before.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.