### DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 4429. Decided September 19, 1903.]

SARAH WOODWARD et al., Appellants, v. H. C. TAYLOR et al., Respondents.[1]

TAXATION—ASSESSMENT LIST—OMISSION OF OWNER'S NAME—NOTICE. The assessment of real property to the wrong person and the omission of the name of the owner does not invalidate a tax under the revenue laws of 1890, 1893, 1895 and 1897, providing that realty shall be listed "with the name of the owner if known, and if unknown, so stated," where it does not appear that the true owner was known to the taxing officers, since such provision is directory only and not essential to the proceeding in rem by which the tax is enforced.

SAME—PROCEEDING in Rem. There was no substantial change in the method of assessment and collection provided by the revenue laws of said years, which was by a proceeding in rem, in which the assessment itself is due notice to the owner of the realty of the tax charged.

TAX SALE—REDEMPTION—NOTICE TO OWNER—SUFFICIENCY. Notice to a nonresident owner of the expiration of the period of redemption and application for a tax deed, by service upon a resident agent, and upon the tenants in possession, and by publication, is all that is required by Laws 1893, p. 380, § 127, although the assessment was made to the wrong person.

TAXATION—STATUTES—REPEAL. The revenue law of 1891 did not supersede the law of 1890 so as to render the latter inoperative before any assessment could be made thereunder, when proceedings were begun under the act of 1890 before the law of 1891

[1]Reported in 73 Pac. 785, 75 Pac. 646.

went into effect, since the repealing clause repressly excepted from its operation all pending proceedings and existing rights.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 4, 1902, upon motion of the defendants at the close of the plaintiffs' case, at a trial before the court without a jury, dismissing an action to quiet title and recover possession of premises sold for taxes. Affirmed.

*T. O. Abbott* and *Preston, Carr & Gilman,* for appellants, contended, *inter alia,* that the name of the owner was a prerequisite to a valid assessment. *Baer v. Choir,* 7 Wash. 631, 32 Pac. 776, 36 Pac. 286; *Vestal v. Morris,* 11 Wash. 451, 39 Pac. 960; *Coolidge v. Pierce County,* 28 Wash. 95, 68 Pac. 391; *Northern Pac. R. Co. v. Galvin,* 85 Fed. 811; *State Trust Co. v. Chehalis County,* 79 Fed. 282. The notice of the expiration of the period of redemption and application for a tax deed was insufficient because not addressed to the owners. *Slyfield v. Barnum,* 71 Iowa 245, 32 N. W. 270; Black, Tax Titles, §§ 338, 339, 385; Blackwell, Tax Titles, §§ 681, 682 (5th ed.); *Wilson v. Russell,* 73 Iowa 395, 35 N. W. 492; *Price v. England,* 109 Ill. 394; *Denike v. Rourke,* 3 Biss. 39, Fed. Cas. No. 3787. The affidavit of service of said notice did not show a service of notice to the owners, and this invalidates the sale. *Herrick v. Niesz,* 16 Wash. 74, 47 Pac. 414; *Coulter v. Stafford,* 46 Fed. 564.

*Richard Saxe Jones,* for respondents.

MOUNT, J.—This action is to quiet title to certain real estate. Several causes of action are alleged in the complaint. Each cause is to set aside a separate deed to the property in question. It is necessary to notice only the first cause alleged. For some time prior to the year 1891, Sarah Woodward was a nonresident of the state of Wash-

ington, and is still such nonresident. She was the owner of lot 8, in block 11, Maynard's Plat to the City of Seattle. This property was assessed for general, state, and county taxes for the year 1891 in the name of C. Winehill. It does not appear that the taxing officers knew, when the assessment was made, that the property belonged to Mrs. Woodward. Subsequently the taxes for that year became delinquent, and the property was sold in 1894, under the provisions of the revenue act of 1893 (Laws 1893, p. 323, ch. 124). The county of King became the purchaser. Subsequently the county transferred the certificate of sale to the respondents, who thereafter obtained a tax deed. At the trial of the cause the lower court held that this tax deed conveyed a valid title, and dismissed the action. The points relied upon by appellants to secure a reversal are that the property was not assessed in the name of the owner, that no notice of the sale, or of the expiration of the time of redemption, or of the application for a deed, was given to the owner, and that, therefore, the respondents acquired no title to the land by virtue of the sale and tax deed.

In *Baer v. Choir,* 7 Wash. 631, 32 Pac. 776, this court held that, under the revenue law of 1871 (Laws 1871, p. 36), the assessment of unoccupied land to one not its owner was unauthorized and void. In *Vestal v. Morris,* 11 Wash. 451, 39 Pac. 960, this court held that, under the law in force in 1886, the failure to assess real property in the name of a known owner was a substantial failure to comply with the law, and that the assessment was void. At the time of the assessment in each of the foregoing cases, the law then in force was substantially as found in the Code of 1881, § 2832 of which provides:

"The assessor shall set down in an assessment roll, to be prepared by himself, in separate columns and accord-

ing to the best information he can obtain: (1) The names alphabetically arranged of all persons subject to taxation in his county, and numbers of the road and school districts of which each person assessed is a resident. (2) A description of each tract or parcel of land to be taxed, specifying under separate heads the township, range, and section, and the number of the school and road district in which the land lies, or if divided into lots and blocks, the number of the lot and block. (3) The number of acres and parts of an acre, as near as the same can be ascertained, unless the land be divided into lots and blocks. (4) The number of acres and parts of acres in each parcel of land, except town or city lots, that are improved or cultivated. (5) The full cash value of the improvements upon each lot or parcel of land assessed. (6) The full cash value of each lot or parcel of land assessed. (7) The full cash value of all the taxable personal property owned by, or to be taxed against, such persons, as provided by law. (8) The total valuation of all property assessed, real and personal. (9) The amount of road poll tax of each person or firm liable for the same. (10) The amount of poll tax of each person or firm liable for the same."

"§ 2836: If the owner or claimant of any property, not listed by another person, is absent or unknown, the assessor must list and make an estimate of the value of such property."

"§ 2837: If the name of the absent owner is known to the assessor, the property must be assessed in his name; if unknown the property must be assessed to 'unknown owners.' "

After delinquency, taxes were collected by distraint and sale of personal property belonging to the person assessed. In the year 1890 the legislature passed an independent revenue law for the assessment and collection of taxes, and repealed all prior laws. Laws 1889–90, p. 530, ch. 18. By § 49 of this act (page 548) it was provided:

"The assessor shall make out, in the real property assessment book, in numerical order, complete lists of all

lands or lots subject to taxation, showing the names of
the owners, if to him known, so stated opposite each tract
or lot, the number of acres, and the lots or parts of lots,
or blocks, included in each description of property."

For the assessment of personal property, the assessor
was required by § 53, p. 549, to make an alphabetical list
of the names of the persons in his county liable to assess-
ment of personal property, and to require each person to
make a correct statement of such property.    This act pro-
vided for the levy of the taxes for state and other purposes,
and that, when such taxes should become delinquent, if not
paid at a certain time after delinquency, the county auditor
should file in the office of the clerk of the superior court
of the county a list of the delinquent taxes upon real estate
within his county, "which list shall contain a description
of each piece or parcel of land on which such taxes shall
be so delinquent, with the name of the owner, if known,
and if unknown, so stated, appearing on the delinquent
list, and the amount of tax delinquent and penalty for each
year opposite such description, and shall verify such list
by his affidavit that the same is a correct list of the taxes
delinquent for the year or years therein appearing, upon
real estate in said county.    The filing of such list shall
have the force and effect of filing a complaint in an action
by the county against such piece or parcel of land therein
described, to enforce payment of the taxes and penalties
therein appearing against it, and shall be deemed the in-
stitution of such action."   § 100, p. 566.  The act (§ 101)
then provides that the clerk of the court shall publish a
notice directed "to all persons, companies or corporations
who have or claim to have any estate, right, or interest
in, claim to, or lien upon, any of the several pieces or
parcels of land in the list hereto attached," requiring them
to appear and set forth any objection or defenses to the

taxes; and, after publication of the notice, that the superior court should be deemed to have acquired jurisdiction to enforce against the land the taxes, penalties, and costs by a proper judgment to that effect. It also provided for trial in case of any appearance, and that no omission of the assessing or levying officer shall be a defense to the taxes unless the land shall have been partially, unfairly, or unequally assessed, or that the taxes have been paid or the land exempt from taxation. It provided further that the judgment should be final except as to persons who had appeared in the action. It will be readily observed that this act, in so far as it affected real estate, was an assessment *in rem*, and the taxes were enforced against the land, and not against the person, as was the law prior to the act of 1890.

In the year 1893 the legislature passed another independent revenue act for the assessment and collection of taxes, and repealed all former acts. The general plan of this act as to the assessment and collection of taxes was the same as that of the act of 1890 (Laws 1889-90, p. 530, ch. 18). § 45 of the act of 1893 (Laws 1893, p. 341) is as follows:

"The assessor shall list all real property according to the smallest legal subdivision, as near as practicable, and, where land has been platted into lots and blocks, he shall list each lot or fraction thereof separately. The assessor shall make out in the real property assessment books, in numerical order, complete lists of all lands or lots subject to taxation, showing the names of owners if to him known, and if unknown, so stated, opposite each tract or lot in pencil memorandum, the number of acres, and lots or parts of lots, included in each description of property."

Section 48 provides for an alphabetical list of individuals liable to assessment for personal property, as was provided in § 53 of the act of 1890. The manner of en-

forcing the collection of delinquent taxes on real estate under the act of 1893 was substantially the same as under the act of 1890.    In the year 1895 several sections of the act of 1893 were amended.    Section 45 was amended to read as follows (Laws 1895, p. 512):

"The assessor shall list all real property according to the smallest legal subdivision, as near as practicable, and where land has been platted into lots and blocks, he shall list each lot or fraction thereof separately:    Provided, That when several lots in any block, or several blocks in any plat of any addition, subdivision, or townsite, or several tracts of land shall be owned by any one person, firm, syndicate, or corporation, the assessor may group such lots or blocks and tracts so far as practicable.    The assessor shall make out in the real property assessment book, in numerical order, complete lists of all lands or lots subject to taxation, showing the names of owners, if to him known, and if unknown, so stated, opposite each tract or lot in pencil memorandum, the number of acres and lots or parts of lots included in each description of property . . ."

It will thus be seen that there has been no material change since the act of 1890 in the manner of listing, assessing, or collecting taxes on real property in this state. The essential provision for listing and assessing real estate has been maintained in the acts of 1893 and 1895 substantially as it was in 1890, viz.:

"The assessor shall make out, in the real property assessment book, in numerical order, complete lists of all lands or lots subject to taxation, showing the names of the owners, if to him known, and if unknown, so stated, opposite each tract or lot in pencil memorandum, the number of acres and lots or parts of lots included in each description of property."

In the case of *Coolidge v. Pierce County*, 28 Wash 95, 68 Pac. 391, this court held that the omission of the name of the owner and of the entry of unknown owner, under

the curative provisions of the act of 1893 (Laws 1893, p. 323, ch. 124), did not invalidate an assessment for the year 1897 and previous years.    It was there said:

"In the tax levied in 1897 upon realty belonging to plaintiff, under the law of 1895 (Laws 1895, pp. 511, 512, §§ 3, 4), the tax is charged upon the land, and the proceedings are *in rem*.    It was therefore competent for the legislature to provide, as it did, that the land should be assessed by suitable description, in numerical order, at a certain time, and the assessment roll made up and filed at a certain time, and such proceedings may be due notice to the owner of such realty of the tax charged."

But it was also said in that case:

"Counsel for plaintiff urges that the failure to enter the name of the owner or of unknown owner after the description of the realty is a substantial defect, and to the injury of the plaintiff.    This was true under the revenue law prior to the enactment of the statute of 1895.    Under the prior system, real property was assessed to the owner. The owner's name was an essential part of the description. It was in fact a material part of the notice given to him of the tax charged against his real property, and was so adjudged by this court.    *Baer v. Choir,* 7 Wash. 631, 32 Pac. 776, 36 Pac. 286; *Vestal v. Morris,* 11 Wash. 451, 39 Pac. 960.    And see *Railroad Co. v. Galvin,* 85 Fed. 811."

It is argued by appellants that this language is decisive of this case, and it is, in effect, a decision of this court that, prior to the act of 1895, the name of the owner was a necessary requisite to a valid assessment.    At that time we were not considering the effect of any act prior to the act of 1895, and the court assumed without an examination that the prior acts were substanially the same as when the decisions cited were rendered.    It was not necessary in that case to decide what the effect of other acts was.    As we have seen above, there was no material dif-

ference in the manner of listing, assessing, and collecting
taxes upon real estate, between the act of 1890 and that
of 1895.    If the assessment and proceedings to collect
taxes were *in rem* in 1895, as was held in *Coolidge v.
Pierce County,* they were also *in rem* in 1890.    The cases
of *Baer v. Choir* and *Vestal v. Morris* were based upon
the laws providing for assessment of real property to the
owner and collection by distraint of personal property.
Since the act of 1895 provided for assessment and collec-
tion *in rem,* those cases could have no application to the
act of 1895, and this was the distinction which the court
made.    The United States circuit court in *Northern Pac.
R. Co. v. Galvin,* 85 Fed. 811, held that under the statute
in force in this state in 1891 (which was the act of 1890),
the name of the owner was necessary to a valid assessment
of real estate, because it was an essential part of the notice
of the initiation of proceedings to create a tax lien.    The
learned judge in that case assumed that the assessment was
against the person, and that the name of the owner was
necessary to a valid assessment by reason of the two deci-
sions from this court above referred to.    Those decisions,
as we have already stated, were not based upon the act
of 1890, but were based upon the law in force long prior
thereto, which provided for assessments to the person of
the owner.    If the decision in *Coolidge v. Pierce County*
was right—and we still think it was—in holding that the
name of the owner is not necessary to a valid assessment
*in rem,* then *Northern Pac. R. Co. v. Galvin* was wrong
upon that point.    In *Coolidge v. Pierce County* we held
that, "the provision for the memorandum of the name of
the owner or unknown owner may be considered directory
to the officer;  .  .  .  and the omission to mention the
name of the owner, or to assess to an unknown owner,"
was not of the substance of the assessment of the property

under the act of 1895. If it was not of the substance of the act of 1895, it was not of the substance of the act of 1890, and therefore its omission from the assessment of appellants' property in the year 1891 did not invalidate the assessment. The assessment, being valid, was itself notice to the owner of the realty of the tax charged. *Coolidge v. Pierce County, supra.* And when the notice was given, as required by law, to all persons having or claiming any interest in the land to appear and object to and defend against the taxes, and all proceedings were regular, the court acquired jurisdiction of the *res,* and was, therefore, authorized to order a sale of the property. Cooley, Taxation (2d ed.), p. 527; Black, Tax Titles, §§ 168, 170.

It is next urged that there was no notice to the owners of the expiration of the period of redemption and of the application for a deed. This point is based largely upon the point already considered. It is shown by the record that notice, as required by law, was given to all the tenants and occupants of the property and the person in whose name it was assessed, that the owner, Mrs. Woodward, was a nonresident of the state, and that a notice was given to her agent in Seattle, and was also published. This was all that was required by § 127 of the Laws of 1893, p. 380. Holding as we do upon the points above discussed, it is unnecessary to refer to or discuss other errors alleged in the briefs.

The judgment of the lower court is therefore affirmed.

FULLERTON, C. J., and ANDERS and DUNBAR, JJ., concur.

## ON PETITION FOR REHEARING.

[Decided February 29, 1904.]

*T. O. Abbott* and *Preston, Carr & Gilman,* for appellants, contended, among other things, that an error in the name in the notice of sale vitiates the sale whether the proceeding is *in rem* or *in personam.* *Taussig v. Glenn,* 51 Fed. 409; *Troyer v. Wood,* 96 Mo. 478, 10 S. W. 42, 9 Am. St. 367; *Chamberlain v. Blodgett,* 96 Mo. 482, 10 S. W. 44; *Emeric v. Alvarado,* 90 Cal. 444, 27 Pac. 356; *Lewis v. Blackburn,* 42 Ore. 114. This statute was adopted from Illinois where it is held that the provisions must be strictly complied with. *Davis v. Gosnell,* 113 Ill. 121; *Price v. England,* 109 Ill. 395; *Gage v. Hervey,* 111 Ill. 305; *Gage v. Mayer,* 117 Ill. 632, 7 N. E. 97; *Stillwell v. Brammell,* 124 Ill. 338, 16 N. E. 226; *Gage v. Stewart,* 127 Ill. 207, 19 N. E. 702, 11 Am. St. 116; *Combs v. Goff,* 127 Ill. 431, 20 N. E. 9. A difference in the name in the affidavit and in the assessment is fatal. *Gage v. Mayer, supra; Gonzalia v. Bartelsman,* 143 Ill. 634, 32 N. W. 532. Notice addressed to the wrong person is held fatal. *Lynn v. Morse,* 76 Iowa 665, 39 N. W. 203. If it appears that the real owner has not been served, the sale is void. *Smith v. Prall,* 133 Ill. 308, 24 N. E. 521; *Stilwell v. Brammell, supra; Harding v. Brophy,* 133 Ill. 39, 24 N. E. 558; *Smyth v. Neff,* 123 Ill. 310, 17 N. E. 702. Service upon an agent is not a good notice. *Gage v. Waterman,* 121 Ill. 115, 13 N. E. 543. These rules are supported by authorities elsewhere. Cooley, Taxation, pp. 532, 536 (2d ed.); Black, Tax Titles, 348, 350 (2d ed.); *Kessey v. Connell,* 68 Iowa 430, 27 N. W. 365; *Weaton v. Knight* (Iowa), 16 N. W. 532; *Arthur v. Smathers,* 38 Pa. St. 40; *Doughty v. Hope,* 3 Denio 594; *Dentler v. State,* 4 Blackf. 258; *Hartley v.*

*Boynton,* 17 Fed. 873; *Walsh v. Burke,* 134 Cal. 594, 66 Pac. 866; *Miller v. Williams,* 135 Cal. 183, 67 Pac. 788.

*Richard Saxe Jones,* for respondents, contended, among other things, that the name of the owner is not essential in a proceeding *in rem.* *Witherspoon v. Duncan,* 4 Wall. 210, 18 L. Ed. 342; Black, Tax Titles, § 110 (2d. ed.). The strict construction in Illinois has been modified. *Hammond v. Carter,* 155 Ill. 579, 40 N. E. 1019. And does not apply here, where the rule is that a judgment in a tax case cannot be collaterally attacked for irregularity. *Kizer v. Caufield,* 17 Wash. 417, 49 Pac. 1064; *Eitel v. Foote,* 39 Cal. 439. This law is liberally construed in Iowa, where the decisions uphold the judgment in the case at bar. *Trulock v. Bentley,* 67 Iowa 602, 25 N. W. 824; *Irwin v. Burdick,* 79 Iowa 69, 44 N. W. 375; *Stull v. Moore,* 70 Iowa 149, 30 N. W. 387; *Hillyer v. Farneman,* 65 Iowa 227, 21 N. W. 578; *Rice v. Haddock,* 70 Iowa 318, 30 N. W. 579; *Johnson v. Brown,* 71 Iowa 609, 33 N. W. 127; *Baker v. Crabb,* 73 Iowa 412, 35 N. W. 484; *Bolin v. Francis,* 72 Iowa 619, 34 N. W. 447.

PER CURIAM.—On petition for rehearing our attention is called to the fact that nothing was said in the opinion about the act of 1891, Laws 1891, p. 280, and it is now insisted that the act of 1890 never became operative for the following reasons: Because it became a law on March 28, 1890, without the approval of the governor; it contained no emergency clause, and therefore did not become effective until June 28, 1890; by its terms the assessment books were to be delivered to the assessor on the last Saturday in March, and that officer was to begin his duties in April, which was two months prior to the time the act became effective; on March 9, 1891, another revenue act was

passed, which became effective at once. It is insisted that the act of 1891 repealed and superseded the act of 1890, that the latter act never became operative, that the assessment for the year 1891 was therefore made under the act of 1891, and that, under § 45 thereof, the system of numerical assessment or assessments *in rem* did not apply for that year. This theory of the case was not presented to the court below, and was not mentioned in the arguments or briefs on the appeal, but the case was presented both in the lower court and in this court upon the theory that the assessment was made under the act of 1890, as in fact it was, and the act of 1891 was for that reason not mentioned.

If the act of 1890 was superseded by the act of 1891, as stated, there would be much force in appellant's position, but in the repealing clause of the act of 1891 it was expressly provided (Laws, 1891, p. 325, § 119):

"That the repeal of said act [1889-90] shall not be construed to impair any existing right, or affect any proceeding pending at the time this act shall take effect; but all proceedings for the assessment of any tax or collection of any tax, or special assessment remaining incomplete, may be completed under the provisions of the above entitled act hereby repealed."

Proceedings for the assessment in King county were begun in 1891 under the act of 1890, before the passage of the act of 1891. These proceedings were completed under the saving provision above set out. It follows, therefore, that the provisions of the act of 1891 did not affect the validity or method of the assessment under the act of 1890.

Other questions presented in the petition for rehearing do not require further discussion. We are satisfied with the conclusion reached in the original opinion. The petition for rehearing is therefore denied.