(May 26, 1909.)

OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Respondent, v. PIONEER IRRIGATION DISTRICT, Appellant.

[102 Pac. 904.]

IRRIGATION DISTRICT—ORGANIZATION—HEARING—ASSESSMENT OF BENEFITS—JUDGMENT CONFIRMING DISTRICT—RES ADJUDICATA—ANNUAL ASSESSMENTS—DESCRIPTION OF LAND.

1. The statute of this state authorizes the board of county commissioners to include within the boundaries of an irrigation district all lands which in their natural state would be benefited by irrigation and are susceptible of irrigation by one system; and this is true regardless of the question as to what particular use is being made of any particular tract or piece of land at the time the district is organized.

2. Where a railroad corporation owns right of way and station grounds within the boundaries of a proposed irrigation district, and quietly sits by and makes no objection or protest to the or-

ganization of such district, or the confirmation of the same, such railroad company is concluded by the action of the board of county commissioners in including such right of way and station grounds within the district, and the judgment of the district court confirming such district, and cannot attack the jurisdiction of the district to assess such lands on the ground that the same were not benefited, in a collateral proceeding.

3. Whether the right of way and station grounds of a railroad company will be benefited by a system of irrigation works within an irrigation district is committed to the judgment of the board of county commissioners; and when such board has determined that such land will be benefited and includes such land within the boundaries of such district, the action of such board is final and conclusive against a collateral attack.

4. The mere fact that the railroad company for the time being is using its lands for right of way and depot purposes is not a reason why such lands will not be benefited by a system of irrigation works controlled by an irrigation district, as the question of benefits is to be determined with reference to the natural state and condition of the land, and not with reference to the use being made of such land.

5. In determining whether lands will be benefited by a system of irrigation works, the board of county commissioners are not limited to lands which will be used for agricultural purposes or upon which water will be beneficially used or to lands devoted to any particular use; but the board is empowered and given jurisdiction to determine whether all lands within the district will be benefited without reference to the use to which the same will be put.

6. Section 2 of the Laws of 1901, page 191, requires the petition for the organization of an irrigation district to describe the boundaries of such district, but does not require the petition to contain a specific and accurate description of each tract or legal subdivision of land within the district.

7. Such statute does not require that the notice given of the presentation of the petition or the notice of the time when the same will be heard, contain a description of the different tracts or legal subdivisions within the boundaries of the proposed district.

8. Section 11 of the act of March 18, 1901 (Laws of 1901, p. 191) requires the board to examine all tracts and legal subdivisions within the boundaries of the district and apportion the benefits according to their judgment.

9. This provision of the statute, which requires the board to examine each particular legal subdivision or tract within the district and apportion the benefits, does not require the board, in designating the benefits, to particularly and specifically describe each tract or

fractional part of such legal subdivision according to the separate ownership thereof, where the benefits accruing to all parts of such legal subdivision are the same.

10. If, however, in assessing the benefits the board determine that any part or tract less than a legal subdivision be benefited differently from the remainder or any other part or tract, then the board is required to designate and describe the benefit to such particular tract or fractional part.

11. The benefits fixed by the board are laid against the land, and the proceeding is a proceeding *in rem* and the benefits have reference to the land; and where the board, in preparing a list of the lands against which benefits are laid, designate upon such list the legal subdivisions across which the right of way of a railroad company passes and designate the rate per acre apportioned to each legal subdivision, it is a substantial compliance with the statute, and is not void because the right of way is not particularly and separately described.

12. The list thus prepared is notice to the railway company of the benefits assessed against each legal subdivision, of which its right of way is a part; and where the list has been thus prepared, and no objection is made by the company on account of a defective description or want of description at the time of the hearing of the confirmation of said district, the owner of such property is concluded in a collateral attack by the judgment.

13. Section 18, Laws of 1899, page 417, empowers the district court upon the hearing for confirmation to determine the legality and regularity of all of the proceedings taken with reference to the organization of said district and by such district up to the time the judgment of confirmation is rendered, including all proceedings affecting the legality or validity of the bonds issued by said district, and the apportionment of costs and the list of such apportionment; and every person interested in said district is given an opportunity to appear and contest the same.

14. Section 11 of the act of March 18, 1901, amending the Laws of 1899, expressly provides "That the proceedings of said board of directors in making such apportionment of cost and the said list of such apportionment shall be included, with other features of the organization of such district which are subject to judicial examination and confirmation as provided in sections 16, 17, 18, 19 and 20 of this act."

15. The fact that the board of directors, in assessing benefits to lands within an irrigation district, fail to list the lands according to each separate ownership, but do list the same according to each legal subdivision, does not show that the board did not intend to assess benefits to all the lands within the legal subdivision.

16. The statute requires the board to assess benefits against each legal subdivision or tract within the district; and where less than a legal subdivision is benefited in a different degree or amount than the remainder of the legal subdivision or tract, then the board is required to fix and determine the benefits accruing to such particular tract; but where the entire legal subdivision or tract is benefited equally, then the board may lay the assessment against the .legal subdivision, and thus include the smaller or fractional parts thereof.

17. The fact that the officials of an irrigation district neglect to assess the right of way and station grounds of a railroad company for certain years is not a reason why such right of way and station grounds are not subject to assessment by said district; and the company cannot defeat a future assessment by reason of the fact that its property was not assessed for any particular year or years prior to the assessment made.

18. The fact that the statute makes no provision for notice to the land owner that on a particular day the board of directors will assess benefits to the lands within the district will not render such statute unconstitutional where the statute does provide for notice to be given of the proceedings to organize such district and notice of the hearing for the confirmation of the organization and proceedings of such district, at which hearing the court is required to examine all the proceedings involved in the organization of such district, including the assessment of benefits.

19. If the record show that the board of directors, in levying an assessment for maintenance and to pay the bonded indebtedness of an irrigation district, substantially complied with the statute, and the assessment-roll is made up in substantial compliance with the statute, the assessment thus levied will be upheld if the description of the property is sufficient to give the land owner notice that such property is burdened with such assessment.

20. The power and jurisdiction of the state board of equalization with reference to the assessment of railroad property has reference to assessments made for general state, county and municipal purposes, and not to assessments made for local improvements.

21. Where territory has not been included within the boundaries of an irrigation district in accordance with the laws governing the taking of territory into an irrigation district, the district has no power or jurisdiction to assess the property so included.

22. Where it appears that an irrigation district has attempted to change the boundaries of such district so as to include other territory, but has failed to give the notice required by the statute of the intention of such district to change such boundaries, and the owners of land attempted to be taken into such district have no notice of the change in boundaries and the inclusion of such land within the district, such owners are not prevented from challenging

the legality of the change in the boundaries of such district until they have had their day in court.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

An action to enjoin and restrain the defendant irrigation district from collecting an annual tax levy made by said district. Judgment for plaintiff. *Reversed.*

Rice, Thompson & Buckner, for Appellant.

Being within the district, the question of whether or not the lands would be benefited by irrigation, and were capable of irrigation from a common source, and the same system of works, was submitted to the board of county commissioners under the law. That board had jurisdiction of that question, and its findings thereon are final as against a collateral attack. No question of that description can be raised in an action of this kind, at this time, to prevent the collection of taxes. (*Modesto Irr. Dist. v. Tregea,* 88 Cal. 334, 26 Pac. 237; *Andrews v. Lillian Irr. Dist.,* 66 Neb. 458, 92 N. W. 612, 97 N. W. 336; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369; *In re Madera Irr. Dist. Bonds,* 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 675, 14 L. R. A. 755.)

Respondent cannot require that the levy of assessments for district purposes shall be made by the state board of equalization, in that the statute requiring assessments of railroad property to be by state board has reference only to state, county, and municipal taxation. (*Tregea v. Owens,* 94 Cal. 317, 29 Pac. 643; *Turlock Irr. Dist. v. Williams,* 76 Cal. 360, 18 Pac. 379; *Hagar v. Board etc. of Yolo County,* 47 Cal. 222.)

The board may include within the boundaries of the district all lands which, in their natural state, would be benefited by irrigation, and are susceptible of irrigation by one

system, although buildings may have been erected thereon and the land thereby rendered unfit for cultivation. (*Modesto Irr. Dist. v. Tregea, supra.*)

In the lists as prepared by the board of directors, the name of the Oregon Short Line R. Co. does not appear, but the legal subdivisions through which the right of way passes do appear, and the name of the owner does appear, without any deduction for the right of way, and without mentioning the right of way. This is sufficiently in compliance with the law to justify the assessor of the district in levying an assessment against the right of way of the respondent. The assessment is against the land and not against the person. (*Landregan v. Peppin,* 86 Cal. 122, 24 Pac. 859; *Lake County v. Sulphur etc. Mining Co.,* 66 Cal. 19, 4 Pac. 876; *Coolidge v. Pierce County,* 28 Wash. 95, 68 Pac. 391; *Woodward v. Taylor,* 33 Wash. 1, 73 Pac. 785, 75 Pac. 646; *French v. Taylor,* 199 U. S. 274, 26 Sup. Ct. 76, 50 L. ed. 189; *Witherspoon v. Duncan,* 4 Wall. 210, 18 L. ed. 339; *Co-op. etc. Assn. v. Green,* 5 Ida. 660, 51 Pac. 770.)

The action of the board of directors, in incorporating the town lots of Nampa into the district, having been acquiesced in by the people, both of the district and of the territory involved, for a number of years, the people having accepted the assessments levied and paid the same, it is too late to raise the question now. (*State v. Steunenberg,* 5 Ida. 1, 45 Pac. 462; 1 Dillon's Municipal Corp., 4th ed., sec. 43; *Geneva v. Cole,* 61 Ill. 397.)

P. L. Williams, and D. Worth Clark, for Respondent.

In the present case, the law commanded the assessments to be made in accordance with the benefits inuring to the property, and in so far as plaintiff's property is concerned, no benefits did or could accrue by the construction of such works; therefore there could be no basis for the levying of an assessment. Benefits, to justify assessments for local improvements, must be special, direct, immediate and certain. (*Friedenwald v. City of Baltimore,* 74 Md. 116, 21 Atl. 555;

*State ex rel. New Jersey & T. Co. v. Newark,* 27 N. J. L. 185; *Thomas v. Gain,* 35 Mich. 162, 24 Am. Rep. 535; *Tidewater Co. v. Coster,* 18 N. J. Eq. 518, 90 Am. Dec. 634; *New York & H. H. R. R. Co. v. New Haven,* 42 Conn. 279, 19 Am. Rep. 534; *State (Kellog, Prosecutor) v. City of Elizabeth,* 40 N. J. L. 274; *Kersten v. City of Milwaukee,* 106 Wis. 200, 81 N. W. 948, 1103, 48 L. R. A. 851.)

The right to levy a local assessment proceeds and is justified upon the theory that the property against which the assessment is placed is enhanced in value by the improvements to an amount equal to the assessment exacted. (*State v. Judges,* 51 Minn. 539, 53 N. W. 800, 55 N. W. 122; *Davies v. City of Los Angeles,* 86 Cal. 37, 24 Pac. 771; *Ill. Cent. R. R. v. Decatur,* 147 U. S. 190, 13 Sup. Ct. 293, 37 L. ed. 132; *Oregon etc. R. Co. v. City of Portland,* 25 Or. 229, 35 Pac. 452, 22 L. R. A. 713; *Mt. Pleasant v. Baltimore etc. R. Co.,* 138 Pa. 365, 20 Atl. 1052, 11 L. R. A. 520.) The rule of law in this respect is much stronger in cases where railroad rights of way are involved. (*Allegheny v. Western Penn. R. Co.,* 138 Pa. 375, 21 Atl. 763; *Chicago R. I. & Pac. R. v. City of Ottumwa,* 112 Iowa, 300, 83 N. W. 1074, 51 L. R. A. 763; *Southern Cal. R. Co. v. Workman,* 146 Cal. 80, 79 Pac. 586, 82 Pac. 79; *Naugatuck R. Co. v. Waterbury,* 78 Conn. 193, 61 Atl. 474; *Farmers' etc. Co. v. Borough of Ansonia,* 61 Conn. 76, 23 Atl. 705; *Boston v. Boston etc. R. Co.,* 170 Mass. 95, 49 N. E. 95; *Detroit etc. R. R. v. City of Grand Rapids,* 106 Mich. 13, 58 Am. St. 466, 63 N. W. 1007, 28 L. R. A. 793; *City of Muscatine v. Chicago R. I. & P. R.,* 88 Iowa, 291, 55 N. W. 100; *McCutcheon v. Pacific R. Co.,* 72 Mo. App. 271.)

The right of way and station grounds is not such property as can be used for agricultural purposes even if the railroad company desires, and while the railroad company's title is a base or qualified fee, it is certainly not such a tract or legal subdivision of land as the legislature intended to have included in irrigation districts for taxing purposes. (*Ill. Cent. R. R. Co. v. City of Chicago,* 141 Ill. 509, 30 N. E. 1036.)

The effect of the levy of special assessments being to charge the property of a citizen with a burden for the public benefit, the provisions of the law must be strictly pursued. Each act is essential to the exercise of jurisdiction, and each act must be rigidly performed. (25 Am. & Eng. Enc. Law, 1204; *Redfork Levee Dist. v. St. Louis, Iron Mt. & S. R. Co.,* 80 Ark. 98, 96 S. W. 117; *New Haven & Fort Wayne Turnpike Co. v. Bird,* 33 Ind. 325.)

If the statute requires the name of the owner to be stated in the assessment proceedings, failure to state the name of the owner as required by statute invalidates such proceedings. (*Weinreich v. Hensley,* 121 Cal. 647, 54 Pac. 254; *Gwynn v. Dierssen,* 101 Cal. 563, 36 Pac. 103; *Stockton v. Dunham,* 59 Cal. 608; *McChesney v. People ex rel. Kern,* 145 Ill. 614, 34 N. E. 431; *Reeves v. Grottendick,* 131 Ind. 107, 30 N. E. 889; *Sedalia v. Gallie,* 49 Mo. App. 392; *Felthousen v. City of Amsterdam,* 23 N. Y. S. 424, 69 Hun, 505; *Hawthorne v. City of East Portland,* 13 Or. 271, 10 Pac. 342.)

The irrigation district is seeking to sell certain portions of our right of way and station grounds, which are detached portions used in connection with an interstate railroad in carrying on the business of interstate commerce. This the district cannot do, and for that reason the injunction in this case was properly issued. (*Lake Shore etc. R. Co. v. Grand Rapids,* 102 Mich. 374, 60 N. W. 767, 29 L. R. A. 195; *Detroit etc. R. Co. v. Grand Rapids,* 106 Mich. 13, 58 Am. St. 466, 63 N. W. 1007, 28 L. R. A. 793; *Louisville etc. R. Co. v. State,* 122 Ind. 443, 24 N. E. 350; *Midland etc. R. Co. v. Wilcox,* 122 Ind. 84, 23 N. E. 506; *Muller v. Dows,* 94 U. S. 444, 24 L. ed. 207; *Dano v. Miss. etc. R. Co.,* 27 Ark. 564; *Cox v. Western Pac. R. Co.,* 47 Cal. 87; *Knapp v. St. Louis etc. R. Co.,* 74 Mo. 374; *Cranston v. Union Trust Co.,* 75 Mo. 29; *Macon etc. R. Co. v. Parker,* 9 Ga. 377; 2 Elliott on Railroads, 2d ed., sec. 790.)

STEWART, J.—The Pioneer Irrigation District is an irrigation district organized on the —— day of July, 1901. The

Oregon Short Line Railroad Company, a corporation, owns right of way and depot grounds within the boundary lines of said district. In the year 1905 the right of way and station grounds of the railroad company were assessed for the purpose of maintaining said irrigation district. The company prosecutes this suit to obtain a restraining order restraining said district and its treasurer from collecting taxes upon the right of way and station grounds of said company. The cause was tried to the court and a decree entered in favor of the railway company and in which the court adjudged:

"That the defendant, the Pioneer Irrigation District, or its officers, have no jurisdiction or authority to assess or levy any taxes upon any part of the property described in plaintiff's complaint, or the property herein described for the purpose of maintaining the said Pioneer Irrigation District."

Then follows a description of the property. A motion for a new trial was made and overruled, and this appeal is from the judgment and from the order overruling the motion for a new trial.

The questions for determination and which are presented by the record are: First, is the plaintiff's right of way and station grounds such property as can be assessed for and subjected to the payment of a tax for the purpose of maintaining said district? Second, if such property is assessable, did the officers of the irrigation district, at the time of the organization thereof, comply with the law so as to be able thereafter to assess the property belonging to the railway company situated within said district? Third, if such property be assessable and if the officers at the time of the organization of the district complied with the law, did they thereafter pursue the course pointed out by statute for the collection of such tax?

Counsel for respondent contend that the right of way and station grounds of the railway company are used strictly for railroad purposes and that water for the purpose of irrigation is not required and has never been used upon such grounds; and for that reason the district had no jurisdic-

tion to assess such property. This argument of counsel is founded upon the claim that the power to assess as conferred by the irrigation law is based upon special benefits to the property assessed; and inasmuch as the right of way and station grounds of the company cannot in any way be benefited by such improvement or the use of water, for that reason the district had no jurisdiction to make such assessment.

Section 2 of the act of March 6, 1899, as amended by the act of March 18, 1901 (Laws 1901, 191), provides for the organization of an irrigation district on presentation of a petition. The petition is required to be accompanied with a map of the proposed district; this map is required to show the location of the proposed canal or other works by means of which it is intended to irrigate the proposed district. The statute provides that a hearing shall be had after notice, by the board of county commissioners, at which hearing the board may make such changes in the proposed boundaries as they may find proper and as are approved by the state engineer, and shall establish and define such boundaries, provided, "That said board shall not modify said boundaries so as to except from the operations of this act any territory within the boundaries of the district proposed by said petitioners, which is susceptible of irrigation by the same system of works applicable to other lands in such proposed district; nor shall any lands which will not, in the judgment of said board, be benefited by irrigation by said system be included within such district."

It will thus be seen from the provisions of this act that a final hearing is provided for after notice to all parties interested, at which the board may make such changes in the proposed boundaries as they may find proper, but shall not except any territory within the boundaries which is susceptible of irrigation by the same system of works applicable to other lands, or include within the boundaries of such district any lands which will not, in the judgment of said board, be benefited by irrigation by said system.

At the final hearing thus provided for the board of commissioners were necessarily required to determine whether or

not the lands to be included within said district would be benefited by the system of irrigation proposed, and were precluded by the statute from including within the district any lands which would not in the judgment of the board be benefited by irrigation by said system. The board of county commissioners was thus designated as the tribunal empowered to determine the question whether the lands included within the district would be benefited by the system proposed; and an opportunity was thus presented to the railway company to appear at such hearing and contest the question of benefits to the lands owned by the company within the district.

The railway company did not appear at this hearing or make any objection to including within the district its right of way and station grounds; and not having appeared at the hearing provided by the statute for determining the question of benefits, the company is concluded by the judgment thus entered, in a collateral attack, and could only review such judgment in the method pointed out by the statute. (*Knowles v. New Sweden Irr. Dist., ante,* pp. 217-235, 101 Pac. 81; *Board of Directors v. Tregea,* 88 Cal. 334, 26 Pac. 237; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369.)

In the case of *Knowles v. New Sweden Irr. Dist., ante,* pp. 217-235, 101 Pac. 81, this court had under consideration the question as to whether an irrigation district had jurisdiction to assess benefits to lands where the owner of such land was also the owner of a water right sufficient to irrigate said lands and adequate in every particular to satisfy the demands of such owner, in which opinion this court said:

"The board of directors of the district had authority to determine whether or not plaintiff's land would be benefited by the organization of the district and the purchase of the irrigation system, and the only way appellant can call in question the action of the board as to the assessments made is the method provided by statute."

The statement thus made in this opinion was intended to refer to the action of the county commissioners in organiz-

ing the irrigation district and not to the action of the board of directors, as under the statute the board of county commissioners are given power and jurisdiction to determine the question whether lands to be taken into a proposed irrigation district will be benefited or not. This question is determined when the district is organized. In this connection we may observe that the case of *Knowles v. The New Sweden Irr. Dist.* was governed by the provisions of the act of March 6, 1899; while the case under consideration is governed by the provisions of the amendatory act of March 18, 1901. Under the former act the assessment of benefits was not made prior to the hearing before the district court on confirmation of the proceedings of the organization of the district; while under the latter act, the assessment of benefits is made prior to the hearing before the district court on confirmation, and by provisions of the statute is directly involved in such hearing.

After a re-examination of this question upon the argument in this case, we are fully satisfied that the conclusion of the court in the Knowles case was correct, and that the owner of land within a proposed irrigation district cannot quietly sit by, fail to appear or file objections against the organization of an irrigation district, and the inclusion of his lands therein, and afterward in a collateral attack deny the jurisdiction of the district to assess such lands, upon the ground that such lands will not be benefited by the system of irrigation works proposed for such district.

It no doubt was the intention of the legislature in enacting the district irrigation law that the boundaries of the district should be so adjusted as to include within the district only such lands as could be irrigated from the system proposed and would be more or less benefited by the construction or purchase of such system; but in fixing the boundaries of the district the statute does not limit the lands, to be included therein, to lands which are being used for any particular purpose, or to lands which require water for irrigation at the particular time the district is organized. The mere fact that the railroad company for the time being is

using its lands for right of way and depot purposes is not a reason why such lands will not be benefited by a system of irrigation works controlled by the district or a reason why such lands should not be included within the boundaries of such district.

The question whether lands proposed to be incorporated within an irrigation district will be benefited has reference to the land in its natural state and not to the use to which the land is being put at the time the district is organized. We think this construction clearly appears from the language of the statute. In the very nature of things, an irrigation district must cover an extensive area of land, and if only land requiring the application of water, because of the use being made of it at the time the district is organized, can be included within the boundaries of the district, then it might be impossible to create such district out of contiguous territory; and the commissioners would be required to exclude from the boundaries of such district tracts of land which, although the same did not require water at the particular time of the organization of such district, yet upon the happening of some event would be placed in the same condition as other lands requiring water at the time of the organization of such district; and the boundaries of the district would necessarily include therein much land of irregular descriptions which would be excepted from the operation of the district irrigation law. We do not believe that this was intended by the statute, but, on the contrary, that the board of commissioners are authorized and empowered to incorporate within a proposed irrigation district such lands as in their natural state would be benefited from the system of works proposed.

We are satisfied that by the enactment of the irrigation law under consideration the legislature intended to confer jurisdiction and power upon the board of county commissioners to include within the boundaries of an irrigation district all lands which in their natural state would be benefited by irrigation and are susceptible of irrigation by one system, regardless of the use to which any particular

tract of land may be put at the time the district is organized; and although such use may be of such a character as to render such land unfit for cultivation and make it unnecessary to apply water to such land to aid in the use to which the same is put.

It seems reasonable, and we believe we are justified in concluding, that although water may not be applied to a beneficial use upon a particular tract of land in an irrigation district, yet if a system of irrigation is provided by the district from which the lands of such district are irrigated and thereby benefited, it necessarily benefits all lands of the district whether any particular tract may require or use thereon the water provided by such system. If this be true, then it would follow that although the right of way and station grounds of the railway company were not in a condition to have water applied to such lands in the use made of them at the time the district was organized, yet such lands would necessarily be benefited by reason of the fact that the application and use of the water from such system to other lands adjacent and surrounding the lands of the railroad company benefited such lands. The question of benefits, however, to the lands using water and the lands not requiring water is one merely of degree, and the extent of the benefits assessed to the lands of the district is a matter committed to the jurisdiction of the board of directors of such district.

In the case of *Board of Directors v. Tregea,* 88 Cal. 334, 26 Pac. 237, the supreme court of California had under consideration the district irrigation law of that state, which in the particulars involved in this case is substantially the same as the irrigation law of this state, and in that case the court said:

"The idea of a city or town is of course associated with the existence of streets to a greater or less extent, lined with shops and stores, as well as of dwelling-houses, but it is also a notorious fact that in many of the towns and cities of California there are gardens and orchards inside the corporate boundaries requiring irrigation. It is equally notorious

that in many districts lying outside of the corporate limits of any city or town, there are not only roads and highways, but dwelling-houses, outhouses, warehouses, and shops. With respect to those things which determine the usefulness of irrigation there is only a difference of degree between town and country. . . . . It being equally clear and notorious, as matter of fact, that there are cities and towns which not only may be benefited by irrigation, but actually have in profitable use extensive systems for irrigating lands within their corporate limits, it cannot be denied that the supervisors of Stanislaus county had the power to determine that the lands comprising the city of Modesto would be benefited by irrigation and might be included in an irrigation district. . . . . In the nature of things, an irrigation district must cover an extensive tract of land, and no matter how purely rural and agricultural the community may be, there must exist here and there within its limits a shop or warehouse covering a limited extent of ground that can derive no direct benefit from the use of water for irrigation. Here, again, the difference between town and country is one of degree only, and a decision in the interest of shop owners in towns, that their lots cannot be included in an irrigation district, would necessarily cover the case of the owner of similar property outside of a town. It is nowhere contended by the appellant that in organizing irrigation districts it is the duty of the supervisors to exclude by demarcation every minute tract or parcel of land that happens to be covered by a building or other structure which unfits it for cultivation, and certainly the law could not be so construed without disregarding many of its express provisions, and at the same time rendering it practically inoperative. We construe the law to mean that the board may include in the boundaries of the district all lands which *in their natural state would be* benefited by irrigation and are susceptible of irrigation by one system, regardless of the fact that buildings or other structures may have been erected here and there upon small lots, which are thereby rendered unfit for cultivation at the

same time that their value for other purposes may have been greatly enhanced.''

In the case of *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369, the supreme court of the United States, after quoting the above extract from *Modesto Irr. Dist. v. Tregea,* and also having under review the district irrigation law of California, says:

''The legislature, not having itself described the district, has not decided that any particular land would or could possibly be benefited as described, and, therefore, it would be necessary to give a hearing at some time to those interested upon the question of fact whether or not the land of any owner which was intended to be included would be benefited by the irrigation proposed. If such a hearing were provided for by the act, the decision of the tribunal thereby created would be sufficient. Whether it is provided for will be discussed when we come to the question of the proper construction of the act itself. If land which can, to a certain extent, be beneficially used without artificial irrigation, may yet be so much improved by it that it will be thereby and for its original use substantially benefited, and, in addition to the former use, though not in exclusion of it, if it can then be put to other and more remunerative uses, we think it erroneous to say that the furnishing of artificial irrigation to that kind of land cannot be, in a legal sense, a public improvement, or the use of the water a public use.

''Assuming for the purpose of this objection that the owner of these lands had by the provisions of the act, and before the lands were finally included in the district, an opportunity to be heard before a proper tribunal upon the question of benefits, we are of opinion that the decision of such a tribunal in the absence of actual fraud and bad faith, would be, so far as this court is concerned, conclusive upon that question.''

If, then, the railroad company was given an opportunity to be heard in accordance with the provisions of the statute upon the question of including the lands of the company within the district, and whether such lands were benefited

by reason of the system of irrigation, and made no objection or protest thereto, but submitted to the action of the tribunal authorized by the statute to determine such matter, then, as said by the supreme court of the United States, in the absence of actual fraud or bad faith such action would be conclusive upon that question.

Counsel for respondent, however, argue that the railroad company had no notice of the intention to include its lands within the district or of the hearing to assess benefits, for the reason that its right of way and station grounds were not described in the petition or in any of the proceedings leading up to and including the time the assessment of benefits was made. A reference, however, to the statute (sec. 2, Laws 1901, p. 191) discloses that the petition for the organization of an irrigation district is not required to specifically describe each tract or legal subdivision within the proposed district. The statute only requires the petition to describe the proposed boundaries. Neither does the statute require that the notice, stating the time of the meeting at which the petition will be presented, or the notice of the time of the hearing of the same, shall contain a description of the different tracts of land or legal subdivisions within the boundaries of the proposed district. The notice, therefore, given to the railroad company was the same notice given to every other land owner within such proposed district, and, as held by this court in the Knowles case, was sufficient to require the railroad company to appear, and in case of failure to do so, to conclude it by the action of the commissioners in organizing said district. (See, also, *Eagleson v. Rubin, ante,* p. 92, 100 Pac. 765.)

Section 11 of the act under consideration requires the board to examine all tracts and legal subdivisions within the boundaries of the district and apportion the benefits according to their judgment. This provision means that the board shall examine all the lands within the district and determine the benefit to each particular legal subdivision or tract. If an entire legal subdivision be equally benefited, then all that is necessary is to designate the benefit to the legal subdi-

vision. If, however, a portion of a legal subdivision desig-
nated as a tract be benefited differently from the remainder
of such legal subdivision, then the board is required to desig-
nate the benefit to the particular tract. The benefits thus
fixed and determined by the board are laid against the land
and not against each individual owner thereof. The entire
proceeding for the determination of benefits is a proceeding
*in rem* against the land, and all that the statute requires is
that the board shall designate the benefit to the particular
legal subdivisions or tracts within the proposed district. The
benefit thus determined has reference to the land and not
to the ownership of the land. It is fixed and determined
with reference to the land and not with reference to the
quantity or description of the land owned by any particular
individual or corporation. In assessing such benefits the rec-
ord shows the board of directors made the following order:

"Order assessing benefits and costs of apportionment: The
board of directors having complied with the law requiring
an examination of each tract and legal subdivision of land
within the boundaries of the Pioneer Irrigation District, for
the purpose of determining the benefits to be derived by
each such tract and legal subdivision from the proposed irri-
gation system and being fully advised in the premises, do
hereby adjudge and order that the benefits accruing to all
lands within the district from such irrigation system shall be
equal, and the apportionment of costs of the proposed works
is fixed at $6 per acre except as hereinafter otherwise pro-
vided; provided that in view of the additional cost of dis-
tribution growing out of the extra expense in the construc-
tion of laterals and so on, and the advantage derived in
many ways, the costs assessed against lots within any in-
corporated town or village within the irrigation district is
hereby fixed at the rate of $2 per lot 25 by 120 feet or frac-
tion thereof, and where in any portion of such incorporated
town or village the lots shall be of a larger size, the costs
assessed against them shall be in the same proportion.

"It is ordered that the secretary be and hereby is author-
ized to prepare such maps, lists, etc., as required by law to

submit with the plans and estimates of the board of directors to the state engineer.''

In accordance with the direction contained in this order a map was prepared of the subdivisions and tracts, with the rate per acre of such apportionment of such costs entered thereon and certified to as follows:

''Pioneer Irrigation District, Canyon and Ada Counties, Idaho.

''This certifies that this map has been prepared under the direction of the directors of the Pioneer Irrigation District and shows each legal subdivision and tract within said district and the rate per acre apportioned or assessed against the same entered thereon, excepting the platted portion of the city of Caldwell included within said boundaries.

''IRVIN BASSET, President.
''Attest: R. H. DAVIS, Secty.''

The board also caused to be made a list of such apportionment or distribution containing a description of each subdivision or tract of land of such district, with the amount and rate per acre of such apportionment or distribution of costs and the name of the owner thereof, which is as follows:

''This is to certify that the following is the list prepared by order of the board of directors of the Pioneer Irrigation District containing the names of the owners and a description of each lot and fraction of lot and block of the platted portion of the city of Caldwell, included within the boundaries of the irrigation district, together with the amount apportioned or assessed against each lot by said board of directors in proportion to the benefits accruing thereto.''

Then follows a description of the town lots of the platted portion of the city of Caldwell. The board also prepared a list of other property and certified as follows:

''This is to certify that the following is the list prepared under the direction of the board of directors of the Pioneer Irrigation District containing a description of each tract and legal subdivision within said district and the name of the owner thereof with the amount per acre apportioned or as-

sessed to the same by the said board of directors after a careful examination in proportion to the benefits accruing thereto, except in the platted portion of the city of Caldwell included within said district.

"The amount as apportioned or assessed against each acre in the following list is $6."

Then follows a description of the legal subdivisions within said district with the name of the owner and the benefits assessed against each legal subdivision. This list, however, does not contain the name of the Oregon Short Line Railroad Company or a description of its right of way or station grounds within said district, but it does contain a description of the legal subdivisions across which such right of way passes and within which such station grounds are situated, and shows that the benefit assessed to each legal subdivision is six dollars per acre. The statute, which requires the board to prepare a list, containing a complete description of each subdivision or tract of land within the district, with the amount and rate per acre of such apportionment or distribution of costs and the name of the owner thereof, is not intended to require the list to contain an abstract of title to the land, nor is it mandatory as to the ownership of such property.

We are of the opinion that inasmuch as the board has prepared a list containing the legal subdivisions across which the right of way of the railroad company passes, designating the rate per acre apportioned to such legal subdivision, that the board has substantially complied with the statute, although they have not designated in such list the description by metes and bounds of the right of way of the railroad company. The list thus prepared was notice to the railroad company that the benefits to each legal subdivision, across which the right of way passed, were fixed and determined at $6 per acre. As heretofore stated, the proceeding fixing benefits is a proceeding *in rem* against the land and not against the owner thereof; and when the board prepared a list of the lands within the district and fixed the benefits accruing to each legal subdivision, the benefits thus fixed

were laid against the land; and the railroad company was thus advised that the benefits to each legal subdivision, across which its right of way passed, were fixed and determined to be $6 an acre. If, then, the assessment of benefits is charged against the land and the proceedings are *in rem* against the land, the owner's name is not an essential part of the description, and the assessment of benefits made against the land is a substantial compliance with the statute, and a sufficient notice to the owner of the benefits charged and adjudged to be against said property. (*Coolidge v. Pierce County*, 28 Wash. 95, 68 Pac. 391; *Woodward v. Taylor*, 33 Wash. 1, 73 Pac. 785; *Best v. Wohlford*, 144 Cal. 733, 78 Pac. 646.) In the case of *Co-operative etc. Assn. v. Green*, 5 Ida. 660, 51 Pac. 770, in discussing the question of taxation, this court said:

"Substantial compliance with the requirements of the law in making assessments is all that is necessary. If property is a subject of taxation, it cannot escape, through some technical failure of the officer to perform his duty, unless it has actually misled the party, to his injury."

So in the case under consideration, the board having determined that all the land within the district was benefited and such benefit was determined to be $6 an acre, and the same was laid against each legal subdivision within the district across and within which the company's property was located, the company should not be allowed to escape the burden of taxation upon the sole ground that in making a list of the several tracts of land within the district, the officers of said district failed to designate thereon the particular and accurate description of the company's right of way and depot grounds.

It will also be perceived that the owner of each legal subdivision within the district is designated, although the owners of fractional parts thereof are not designated. So the list designates the legal subdivisions across and within which the company's right of way and station grounds are located. The fact that the list designates the assessment of benefits to the particular legal subdivision is, in our judgment, a

substantial compliance with the law; and the fact that the list fails to contain the name of the true owner of such legal subdivision or fractional part thereof does not render void the action of the board in fixing and determining the question of benefits.   To permit the railroad company to escape its share of the burdens imposed upon said district by such improvement, because the officers in making up the list of lands and fixing the benefits, failed to specifically and accurately describe the company's right of way and station grounds and designate the railway company as the owner thereof, would be to exact from the officials of such district a strictness in official acts which, in our judgment, was not intended by the statute.

In the case of the *Pioneer Irr. Dist. v. Bradbury,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295, this court held:

"But the amendatory act clearly provides for assessments to be made according to the benefits accruing to each tract of land in such district, and the action of the board in preparing lists of all real estate in their district, by which the assessments each year shall be made, may be contested in the district court, on the ground that such lists are not made with reference to the benefits accruing to each tract of land."

If, then, the railway company was dissatisfied with the assessment of benefits or the list made, it should have appeared and contested the same in the district court, and having failed to do so, is concluded by the judgment of the district court.

Counsel for respondent, however, contend that this court erred in the case of *Pioneer Irr. Dist. v. Bradbury,* in holding that anyone owning land in such district may appear and show that the cost of irrigation works of such district has not been apportioned or distributed in proportion to the benefits accruing to any tract of land in said district, for the reason that at the final hearing the court is only authorized to approve or disapprove the proceedings either in whole or in part, but that no jurisdiction is given to revise the proceedings or to correct any errors that may be found therein; and that no provision is made for further proceed-

ings in case the court disapproves any proceeding already had.

Sec. 16 of the irrigation act (Laws 1899, p. 417) authorizes the board of directors of the irrigation district to file in the district court a petition praying in effect that the proceedings aforesaid may be examined, approved and confirmed by the court. Sec. 17 requires the court to fix a time for the hearing and for notice thereof. Sec. 18 provides:

"Any person interested in said district, or in the issue or sale of said bonds, may demur to or answer said petition."

Sec. 19 provides that: "Upon the hearing of such special proceeding, the court shall have power and jurisdiction to examine and determine the legality and validity of, and approve and confirm each and all of the proceedings for the organization of said district under the provisions of the said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds, and the order for the sale, and the sale thereof. The court, in inquiring into the regularity, legality or correctness of said proceedings, must disregard any error, irregularity, or omission which does not affect the substantial rights of the parties to said special proceeding; and it may approve and confirm such proceedings in part, and disapprove and declare illegal or invalid other and subsequent parts of the proceedings."

Sec. 11 of the act of March 18, 1901, amending the law of 1899, among other things provides:

"*Provided*, that the proceedings of said board of directors in making such apportionment of cost and the said list of apportionment shall be included, with other features of the organization of such district which are subject to judicial examination and confirmation as provided in sections 16, 17, 18, 19 and 20 of this act."

It will thus be seen that this statute expressly authorizes the court at the hearing for confirmation to examine and determine the legality and validity of and approve and confirm each and all of the proceedings for the organization of said district under the provisions of said act, from and in-

cluding the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds and the order for the sale and the sale thereof, including the proceedings of the board of directors in making and apportioning the costs and the list of such apportionment. The list of apportionment of costs thus referred to is the costs required to be apportioned by the board over the tracts and subdivisions of land within the district according to the benefits accruing thereto, as provided in said section.

It will thus be seen that the railway company was given notice of the hearing for confirmation of the district, given an opportunity to object to the amount of benefits laid against its lands within the district, and given the same opportunity granted to every other land owner of such hearing; thus giving to the railway company its day in court at which the railway company was given an opportunity to contest the question as to whether or not the benefits assessed to its property were out of proportion to the benefits assessed to other property, as well as the sufficiency of the list thus prepared. The railway company, having made no appearance at such hearing or made any objection to the apportionment of benefits of the list made, is concluded by the judgment of the district court confirming said district and said assessment; and the same cannot be called in question or attacked in this collateral proceeding.

Counsel for respondent also argue that it is shown by the pleadings that the officers of the irrigation district were acquainted with the character and extent of the right of way owned by the plaintiff, and that the law also made it their duty to examine each tract or legal subdivision critically, and by so doing they would thus have become acquainted with the particular lands owned by the railway company, and because the particular tract owned by the railway company is not designated upon the list, that the board of directors did not intend to assess benefits against the same, and that in fact no assessment was made or intended to be made against such right of way. This argu-

ment of counsel overlooks the fact that the statute does not intend that the board shall lay the assessment of benefits to the several tracts of land according to each separate ownership. The intention of the statute evidently was to require the board to lay the assessment of benefits against each legal subdivision within said district, and where less than a legal subdivision was benefited in a different degree or amount than the entire legal subdivision, then the board is required by the statute to fix and determine the benefit accruing to such particular tract; but where the entire legal subdivision is benefited equally, then the board may lay such assessment against the legal subdivision as such, and such action includes all parts thereof; and the mere fact that the board have failed to designate the true owner of a portion of such legal subdivision will not affect the legality of the assessment made, where it is clearly shown that it was the intention and purpose and the board in fact did assess the benefits equally to all parts of such tract. The railroad company knew what property it owned; it knew the legal subdivisions over which its right of way passed and knew the benefits assessed to such legal subdivisions, and was advised by the list prepared of such fact, just as effectively as though the right of way had been described by metes and bounds.

In this connection counsel for respondent also argue that inasmuch as the district made no effort to collect any taxes upon the plaintiff's right of way for the years 1902, 1903 and 1904, that this clearly indicates that the board did not consider such property subject to assessment. The law, however, determines the duty of the respondent's property to contribute its share of the taxes of said district; and the fact that the officials of such district did not attempt to collect taxes against such property during any one or more years would not relieve such property of its share of taxation or its liability to be assessed according to law within said district. We are unable to discover any reason, either in law or equity, why the respondent's property should be relieved from its liability to taxation for the benefit of

said district from the mere fact that the officials of said district failed to list and assess such property for any particular year. The liability of the respondent's property for taxation is fixed by law and not by the acts of the officials in listing and assessing such property, although the negligence of the officers may prevent the collection of such tax. Certainly the railroad company cannot complain if the district failed to assess its property for the years 1902, 1903, 1904. Such failure did not in any way injure the railway company, but was clearly to its benefit; and it cannot be allowed to complain of future legal assessments because of such failure. But as we understand the contention of counsel for respondent, it is that the failure to assess such property for the years 1902, 1903 and 1904 clearly indicates that the district did not intend to make assessments against such property, and that such failure to assess indicates that no benefits were laid against the respondent's property. This argument, however, overlooks the fact that the law determines what property shall be subject to tax in such district, and commits only to the board of directors the duty of determining the benefits and carrying out the clerical provisions as to the method of assessment. So, under the view we take of this case, it can make no difference whether the directors intended to assess such property or not. The law made it their duty to assess all property in the district according to benefits fixed by them under the provisions of the law.

We are clearly of the opinion that under the statute the assessment of benefits to lands within an irrigation district is strictly a proceeding *in rem,* and that the object and purpose of the statute is to have determined, upon an equitable basis, the benefits accruing to the lands within said district as a basis for levying future assessments for maintaining said district; and this without reference to the ownership of such land, and that if in preparing such list it appears that the board have laid the benefits to all the legal subdivisions within said district, then the mere fact that the board have failed to designate the true owner of such legal subdivisions, or the particular description of

fractional parts thereof, but have indicated the ownership of the larger tract of which the smaller may be a part and laid the benefits against the same, the proceedings of the board in determining such benefits will not be declared or held to be void. The fixing and determination of benefits is not the levying of a tax; it is nothing more than the determination of values as a basis for future assessments, and it seems to us that in determining the question of value, the question of ownership is of no consequence. The railroad company were advised by the law itself that the board of directors must examine all the tracts of land within the district and apportion the costs to the same, and were advised that whatever lands they might own within the limits of such district would be subjected to the proper proportion of such cost; and it would be recognizing a technical objection without merit to say, that because the board did not incorporate within the list a minute description of the company's property or name the owner of the same, the company has not been advised of the assessment of benefits to such land. We cannot agree with this contention.

It is also argued by counsel for respondent that sec. 11 of the act of March 6, 1899, as amended by the laws of 1901 (Laws 1901, 191), is unconstitutional, for the reason that such section makes no provision for notice to the land owner of the time when the assessment of benefits will be made. While it is true the statute makes no provision for notice to the land owner, that on a particular day the board of directors will proceed to assess benefits to the lands of said district, yet the statute did notify every land owner whose lands were included within said district that if the district was organized such lands would be required to bear their equal share of the expenses of said district and the system of irrigation maintained therein; and the law also notified every land owner that the amount of benefits to be assessed had been committed to the determination of the board of directors of such district, and that such board was required to critically examine each tract or legal subdivision of land within said district with a view of determining the benefits

which would accrue to the same. The law gave this notice to each land owner, when the notice of the presentation and hearing of the petition was given, and our attention has not been called to any constitutional provision which would prevent the legislature from authorizing the board of directors of an irrigation district to examine and determine the question of benefits, where the land owner had been fully advised and notified of the organization of such district, and the fact that in the process and development of organization one of the steps was the determination of the amount of benefits to the lands in said district. The determination of the question of benefits is not the fixing of a tax. It is merely an appraisment and a fixing of values of the lands of said district as a basis for future assessments; and. as heretofore held in this opinion, the land owner is given an opportunity to contest the question of benefits upon the final hearing for the confirmation of said district. He is thus given full opportunity for his day in court upon all questions involving the legality of the district and the apportionment of the costs according to benefits, as well as the legality and validity of the bonds.

As to the assessment levied for the year 1905 the record in this case shows the following order:

"A correction of the assessment roll of the district having been completed, which said assessment roll shows the value of the assessable property of the district to be $214,376.67, and the board having before it a statement of the estimated expenditures for the care, operation, management and improvement for the fiscal year beginning July 1, 1905, and ending June 30, 1906, which statement is on file in this office . . . . it is hereby ordered that there be and is hereby levied and assessed at the rate of seven and one-half per centum against each and every dollar of the said $214,376.67, the assessed valuation of the district for said maintenance purposes, which assessment is to be listed and carried out and entered in the proper book by the secretary and delivered to the treasurer of the district, for collection.

"It further appearing that the amount of interest accruing on the bonds of the district for the ensuing year . . . . it is hereby ordered that there be and is hereby levied at the rate of seven and one-half per centum against each and every dollar of the said . . . . the assessed valuation of the district, for the purpose of paying said interest, which assessment is to be listed, carried out, and entered in the proper book and delivered to the treasurer for collection.

"It further appearing that the warrants in the redemption list of the district amount to the sum . . . . it is hereby ordered that there be and hereby is levied and assessed against each and every dollar of the said, etc.

"It further appearing that in addition to the foregoing estimated expenditures . . . . there be and hereby is levied and assessed, a toll in the sum of one dollar against each and every lot within the limits of the said cities of Caldwell and Nampa."

The record then shows that the parties stipulated that the description contained in the complaint and set out in the notice of sale for delinquent taxes is the description of the right of way of the plaintiff company as contained upon the assessment roll for the year 1905, and is an exact copy of the assessment roll so far as the description is concerned. The description thus referred to, as it appears in the complaint and in the delinquent notice, is as follows:

"Idaho Central R. R., Lots 7 and 8, blk. 87; lots 2 to 6 and 9 to 12, blk. 98; lots 7 and 8, blk. 90, Nampa G. & K..........................$10.94

"O. S. L. R. R.   Beginning at intersection of center line of track and north line SW. ¼ NW. ¼, sec. 22-3-2, thence northwesterly a strip of land 200 ft. wide lying 100 ft. each side of center line of O. S. L. track, through sec. 22, 21-16, 17, 8, 7, 6, Tp. 3 N.R. 2 W.; sec. 1, 3, 3; sec. 36, 35, 26, 27, 22, Tp. 4 N.R. 3 W.; to intersection with N. line SW. on quarter sec. 22-4-3-186, 3 A...............$331.55"

A number of other descriptions similar to the above follow.

The question arises: Was this a compliance with the statute?

Sec. 26 of the act under consideration provides:

"At its regular meeting in October the board of directors shall levy an assessment upon the basis as determined in the manner provided in section eleven of this act, sufficient to raise the annual interest on the outstanding bonds. . . . . The secretary of the board must compute and enter into a separate column of the assessment book the respective sums, in dollars and cents, to be paid as an assessment on the property therein enumerated."

It will thus be seen that the order of the board levying such assessment embraces within its terms every act required by the statute to be done by the board in levying such assessment, and that the assessment roll was made up and contained every fact required to be stated therein by this statute. The order of the board directed: "Which assessment is to be listed and carried out and entered in the proper book by the secretary and delivered to the treasurer of the district, for collection."

This duty was performed by the secretary in accordance with the direction of the board and the provisions of the statute. Cooley on Taxation, p. 745, states the rule as follows:

"The designation of the land will be sufficient if it afford the owner the means of identification and do not positively mislead him or is not calculated to mislead him."

In discussing the sufficiency of the description of land, when listed for taxation, the supreme court of California in the recent case of *Best v. Wohlford*, 144 Cal. 733, 78 Pac. 293, says:

"The strictness of construction which at one time prevailed in matters of taxation has been greatly relaxed in modern days. The obligation of all citizens to contribute to the expenses of government is recognized, and instead of regarding proceedings for the levying and collection of taxes as hostile to the property owner, he is considered to be in-

terested equally with all other citizens in the prompt collection of the taxes. A tax properly imposed upon his property will be upheld if the description of the property is sufficient to give him notice that it is burdened with the tax.''

It is next contended that the district has no power or jurisdiction to assess the property of the respondent; that such property can only be assessed by the state board of equalization. The power and jurisdiction of the state board of equalization depends wholly upon the authority given it by statute; and we are unable to find any provision of the statute which gives to the state board of equalization the power or jurisdiction to assess railroad property or other corporate property within an irrigation district. The power and jurisdiction as given to the state board of equalization by the statute has reference to assessments made for general state, county and municipal purposes. The assessment made by the board of directors is simply fixing the rate necessary and required to raise revenue required by the district as apportioned to the lands of the district, according to benefits. The principle involved in assessments for local improvements is different from that underlying general taxation. The organization of the district, in the first instance, was intended for local improvement, and the assessment levied is for the purpose of carrying out the local improvement; and we do not understand the rule to be that the general method of fixing values and making assessments against property for general tax purposes applies to levies made for local improvements.

As said by the supreme court of California in the case of *Turlock Irr. Dist. v. Williams,* 76 Cal. 360, 18 Pac. 379:

''Nor does it follow that the method of assessments, and their collection, adopted must be assimilated to and follow exactly the mode provided in the constitution for the assessment and collection of taxes for general state purposes. The nature of the assessment is one for local improvements, which, however, eventuate in the advancement of the public good, and such assessments and collections can be lawfully

made. It is 'clear that those clauses of the constitution which provide that taxation shall be equal and uniform, and which prescribe the mode of assessment, and the persons by whom it shall be made, and that all property shall be taxed, have no application to assessments levied for local improvement.' ''

The legislature, in providing for the valuation and taxation of telegraph, telephone and railroad tracts, had reference only to assessments made for general state, county and municipal purposes, and did not have in mind or contemplate assessments made for local improvements; and such necessarily is true, for the reason that the assessments for local improvements necessarily must depend upon the benefits accruing to the property assessed; and it would be impracticable for the state board of equalization to determine, at its stated and regular meetings as fixed by law, the question of benefits accruing or to accrue by reason of local improvements.

While sec. 12, art. 7 of the constitution creates the state board of equalization, yet the duties of such board are left to the legislature to prescribe, and the duties thus prescribed by the legislature have to do with the assessment of railroad property for general taxation purposes. Sec. 6 of the same article provides that ''The legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may by law invest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation''; and sec. 8 of the same article provides:

''The power to tax corporations or corporate property, both real and personal, shall never be relinquished or suspended, and all corporations in this state or doing business therein, shall be subject to taxation for state, county, school, municipal, and other purposes, on real and personal property owned or used by them, and not by this constitution exempted from taxation within the territorial limits of the authority levying the tax.''

Yet, while the constitution creates the state board of equalization, it also authorizes the legislature to invest in counties, cities, towns, or other municipal corporations the power to assess and collect taxes, and also provides that the power to tax corporate property shall never be relinquished or suspended; and that all corporations in this state shall be subject to taxation for state, county, school, municipal and other purposes within the territorial limits of the authority levying the tax. The legislature, therefore, having provided for the organization of an irrigation district and giving the power to such district to levy assessments within the territorial limits of the same, vested such district with the power to levy assessments for such local improvement, and such legislation was clearly authorized by the provisions of the constitution. This question is fully discussed and the authorities reviewed in the recent work of Page and Jones on Taxation by Assessment, vol. 1, chapter 5.

One other question remains for consideration. The trial court found that the town lots in Nampa were not, and never had been, made a part of the Pioneer Irrigation District, and this finding, we think, is fully supported by the evidence. The record shows that on the 7th day of June, 1902, a petition was filed with the secretary of the district praying that said town lots in the town of Nampa be taken into and included within the boundaries of the district. The record shows the petition was referred to the attorney of the district; he made his report thereon, and thereafter the petition was granted and the territory ordered included within said district.

It appears, however, and counsel for appellant admit that the notice required by the statute of the presentation of such petition was not given, and that the order admitting the proposed territory did not set out the description of the boundaries as changed, and that no record of the boundaries as changed properly certified was filed in the office of the county recorder. Counsel for appellant admit that these

defects would nullify the action of the board in their efforts to incorporate and include within said district that portion of Nampa set out in the record; and we believe that the admission of counsel for appellant is correct. These matters are statutory and jurisdictional, and it was just as necessary that the statute be followed in these jurisdictional matters in changing the boundaries of a district, as creating the district in the first instance. But counsel for appellant contend that inasmuch as this objection has not been raised until long years after the district was incorporated, and that the boundaries having been acquiesced in by the people generally, and the people having accepted the assessments levied and paid the same, that it is too late to now raise the question.

This argument is based upon the case of *State v. Steunenberg,* 5 Ida. 1, 45 Pac. 462, in which the validity of the incorporation of the city of Caldwell was involved, and in which case the court held that the incorporation of the city had been acquiesced in by the people expressed in two elections covering a period of three years; and that new duties and obligations had been assumed by the corporation, and that during such time no citizen or taxpayer had ever in any way questioned the validity of such organization. That case, however, is very different from the one now under consideration. In that case the citizens of the city participated in the municipal affairs of the city under such organization; and by so participating therein clearly recognized the validity of such incorporation and at no time questioned the same. In the case under consideration, however, the railroad company did not participate in recognizing the validity of the change in the boundaries of such district by incorporating therein the town lots of the city of Nampa, for the reason that no assessment was made against such company during the years after the boundary lines were so changed as to include therein such lots until the assessment made in 1905, which is under consideration in this case.

The railroad company was not called upon to challenge the validity of the boundary of such district by including such lots until the district had taken some action against such lots which in some way affected the railway company; and this did not occur until the year 1905. The railway company was not in a position to question the validity of the change in the boundaries of such district until such time.

For these reasons we hold that the lower court committed no error in holding that the town lots described in the complaint, as being situated within the town of Nampa, were not at such time, and have never been, included within the boundary lines of such irrigation district.

The judgment of the district court is *affirmed* as to the town lots in the town of Nampa not having been included within said district and made subject to assessment, and is *reversed* as to all other parts of said judgment; and a new trial is ordered. Costs awarded to *appellant*.

Ailshie, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by my associates except in so far as it affirms the judgment of the district court as to the town lots in Nampa. I do not think it was ever contemplated by said district irrigation act that a railroad right of way could ever be benefited by irrigation, or that such right of way would ever become susceptible of irrigation from a system of works that might be used by an irrigation district for irrigating the lands in the district. The first section of said act refers to lands susceptible of "one mode" of irrigation, and was never intended to include lands, in assessing benefits, that were never intended to be irrigated.

The record, to my mind, clearly shows that those who organized this district, and the governing authorities of the district for at least three years after it was organized, did not consider the railroad right of way as land coming within the terms of said district irrigation act as being lands

susceptible of irrigation. As no benefits were ever assessed against said right of way, the railroad company has not had its day in court, and had no opportunity to contest an assessment of benefits, for the reason that the board of directors never assessed any benefits to said railroad right of way; but assessed each forty acre tract, across which said right of way extends, to the party holding the legal title thereto at $6 per acre. As said railroad company has not the legal title to said tracts and owns only an easement therein, and that easement not having been assessed, the company has not had its day in court in so far as an assessment of benefits is concerned. The judgment of the district court should be *affirmed.*

(July 6, 1909.)

### ON PETITION FOR REHEARING.

AILSHIE, J.—A petition for rehearing has been filed in which complaint is made that the court did not cite or review the authorities cited in appellant's brief. The court has not the time, nor does it often deem it necessary, to review at length in written opinions the authorities cited by counsel. Authorities are only useful in so far as they elucidate the reasons for a given rule and make plain the justice such rule accomplishes.

Without stating the several propositions advanced by appellant's petition, we will refer briefly to the more prominent ones.

First. It must be admitted as fully settled that a railroad right of way acquired under act of Congress of March 3, 1873, cannot be used or alienated for any other purposes than those named in the grant, and upon a cessation of such use the right granted reverts to the owner of the fee. (*Northern Pac. Ry. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. ed. 1044.) If, therefore, a sale should be made of the railroad company's right of way, the purchaser would acquire only such rights and interest as the

company possessed, and would be limited to the same conditions and restrictions as to use as were imposed by the original grant. A purchaser at judicial sale under decree of court can acquire only such title and right as the defendant in the action has. (*Nelson Bennett Co. v. Twin Falls Land & Water Co.*, 14 Ida. 5, 93 Pac. 789.)

Second. Assessments by irrigation districts are made on the land itself—the soil, irrespective of the use. The decisive question is not the use to which an owner is going to devote his land, but: Is it susceptible of irrigation from the proposed system of irrigation? For such purposes an assessment against the land itself as belonging to the owner of the fee or paramount title covers all special and limited rights, interests and easements in the land. While it is generally held that land dedicated to a public use cannot while so held and used be assessed for a similar public use or necessity, this does not apply where the ownership of the easement, right or franchise is private and the *use* only to which it is applied is *quasi* public. In such case the use can be as readily carried out and enjoyed by the public with the ownership in one corporation, organized and created for such ownership and management, as in the hands of another. Where the ownership is in the public, a very different question arises.

Third. As to whether a sale of appellant's right of way takes only appellant's easement and right or the entire fee and reversionary right is unimportant here. It is enough for appellant if a sale would take all its right and vest the same in the purchaser. Of that we think there can be no doubt. That the assessment must be on the basis of benefits to be received is equally true. But that question cannot arise in this case. The company has had its day in court, both before the commissioners and in the district court on confirmation proceedings, and the judgment therein is now final, and the company can no longer be heard to question the benefits to be received. As a matter of fact, it is common knowledge that in this state railroad companies do irrigate

a part, at least, of their station grounds at all such stations as they can conveniently get water, and it was admitted on oral argument of this case that appellant does irrigate a part of the station grounds covered by this controversy. Whether it be from this system or not is immaterial for the purpose of this inquiry.

The question of notice was fully covered in the original opinion.

Fourth. It is contended that a sale of a portion of appellant's right of way cannot be made. Elliott on Railroads, vol. 2, sec. 790, treating of the subject of assessments on a railroad right of way, says:

"While it is probably true that there may be a lien on the right of way of a railroad for a local assessment, where such assessment is authorized by statute, the manner of enforcing such assessment is not clearly settled. The right of way of a railway company is a part of the company's property, without which it could not perform the duties it owes to the public. To subject a portion of the right of way to a sale to enforce a local improvement would greatly embarrass, if not entirely destroy, the ability of the company to perform its public functions. The rights of the public are regarded as superior to the rights of any individual, or group of individuals. Local assessments are usually levied on a small portion of a railway right of way, varying from a few feet in length to miles in length. To permit such portion to be sold would prevent the operation of the road, and, on the grounds of public policy, it is held that the ordinary remedy of enforcing the collection of a local assessment by a sale of the property benefited does not apply to the enforcement of an assessment against the right of way of a railway company. While there is a conflict of authority on this subject, the decided weight is that the right of way, if sold to pay the assessment, must be sold as a whole, and not in broken fragments."

It will be seen from an examination of the cases cited in the note to this text, as well as the text and notes in 28

Cyc. 1211, that the great majority of the courts have held that a railroad right of way cannot be sold in parcels or fragments for the satisfaction of local assessments. There are courts, however, which hold to the contrary. This is particularly true in the state of Illinois. (*Wabash & Eastern Ry. Co. v. East Lake F. Dist.,* 134 Ill. 384, 25 N. E. 781, 10 L. R. A. 285; *Chicago & N. W. Ry. Co. v. Village of Elmhurst,* 165 Ill. 148, 46 N. E. 437.)

It seems to be conceded by all the authorities that the legislature has the power to authorize the sale for local assessments of a portion only of a railroad right of way, or, rather, of the portion or division situated within the taxing district. It is also true that practically all the authorities holding that the right of way, if sold at all, must be sold in its entirety, rest, not upon any constitutional or organic right, but upon what is termed "public policy." It is said by these authorities to be contrary to the public interest and convenience, and detrimental to bondholders and the railroad company to have a railroad right of way sold in sections or subdivisions. The reason for this rule fails to appeal to us. The danger of a railroad system being divided into numerous sections and sold to divers purchasers is too remote and improbable to furnish a basis or premise on which to deny justice to taxing districts and a ready means of collecting assessments lawfully levied. We may say here that we know of no principle of public policy in this state that forbids the sale of a portion of a railroad right of way. In order for a principle or rule to have become a part of the public policy of a state, it must have been either expressly or impliedly recognized and acted upon by some one or all of the departments of state government, or have found lodgment and recognition, either expressly or impliedly, in the constitution, the organic law of the state. No such principle has been either expressly or impliedly recognized in this state. The contrary has been the uniform rule recognized by the legislative department of this state and enforced by the executive and judicial departments in

the revenue laws of the state.   The irrigation district act
(secs. 2407-2415, Rev. Codes) directs and requires that the
specific property on which the assessment is levied shall be
advertised and sold in the event the assessment is not paid.
The assessment can only be made upon property within the
taxing district.   We find, therefore, that the legislature has
provided that only such portion of a railroad company's
property as is situated within an irrigation district can be
sold.   As for a sale of a portion of a company's right of
way being any more detrimental to the public interest than
a sale of the whole, it is difficult to understand.   We do not
see how the railroad company, not being the public itself
and not being the representative of the public, can complain
if a taxing district sells less than the whole line of its right of
way.   The purchaser would acquire the same rights as the
railroad company held, and would be entitled to operate
trains over the road the same as they were previously
operated by the original company.   It makes no difference to
the public whether one company or another is operating
a railroad system.   But this discussion of the sale of frag-
ments and subdivisions of a railroad right of way for local
assessments is purely theoretical and imaginary.   It has al-
most uniformly arisen in cases where the company was seek-
ing to prevent a sale.   The cases are extremely difficult to
find, as a matter of fact and in practice, where a railroad
company has suffered a sale either of its whole line or any
portion thereof for a *local assessment*.   The company that
*cannot pay* a local assessment is not able to operate its
road anyway, and a company that *will not pay*, after it has
been judicially determined that it should do so and that it
is legally bound to do so, ought to be put out of business
and succeeded by one that is law-abiding.   Fortunately, and
to the credit of the railroad companies operating in this state,
it has never been found necessary to actually make any such
sale in Idaho for a local assessment.

We discover no reason for granting a rehearing. Petition denied.

Stewart, J., concurs.

Sullivan, C. J., thinks a rehearing should be granted.